## A00A1767. PEEK v. THE STATE.
### (542 SE2d 517)

PHIPPS, Judge.

Edward Peek appeals his conviction for burglary. He asserts that the evidence was insufficient to support his conviction, that the trial court erred in failing to grant a mistrial based upon improper closing argument, and that his stepfather was improperly allowed to sit on the jury. We find that the evidence was sufficient and that the remaining issues are either not preserved for appellate review or not supported by the record. Therefore, we affirm.

Viewed in the light most favorable to the verdict, the evidence authorized the jury to find the following. On March 5, 1996, Mandy Parker arrived home to find her back door "standing wide open." Shortly afterward, she saw a man exit the door carrying a videocassette recorder under his arm. The man fled, and Parker gave chase in her truck. The man threw down the VCR in Parker's yard, passed through a barbed wire fence, and ran across pastures neighboring Parker's yard. Parker could not continue the chase after the man crossed the fence.

She called the police, who responded within minutes. She described the man as black, dark-skinned, thin, with short hair, and wearing a white shirt and blue jeans. One of the officers drove "up the road just a little further" to look for a person matching that description. Approximately 20 minutes after Parker's call, the officer saw Peek one-half mile to a mile from Parker's home walking away from her street. Peek matched the physical description and was wearing a white button-down shirt and light blue or turquoise-colored blue jeans. The officer stopped him and radioed back to the scene for clarification of the clothing description. Parker stated that the man's shirt was a button-down type and that his jeans were turquoise in color.

The officer then took Peek to Parker's residence. When she saw Peek in the police car, Parker immediately stated that he was the man she had seen leaving her home. Peek got out of the car and stated that he "wasn't the person," but Parker identified him again. She also noted that Peek's shirt had a tear in the back which was not there when she saw him leaving her home. She suggested that the shirt could have been torn when Peek passed through the barbed wire fence.

At trial, Parker again identified Peek as the man who had left her home with her VCR and testified that she had been as close to him as six to eight feet. Peek testified that he had been window shopping in town and was simply walking home when the officer stopped him.

1.

On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[2]

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ."[3] There is no dispute that a burglary occurred. The issue is whether the evidence was sufficient to establish beyond a reasonable doubt that Peek was the burglar.

Peek contends that the evidence was circumstantial and did not exclude every reasonable hypothesis of his innocence. Therefore, he contends, the evidence was insufficient to warrant conviction.[4] But Peek's conviction was not based solely upon circumstantial evidence. Parker testified that she saw him exit her home carrying her VCR and that she had not given him authority to enter her home.

Peek emphasizes that he was stopped a mile from Parker's home and that at trial Parker referred to the burglar as *Calvin* Peek and described the burglar's shirt as blue before later correcting herself and stating that it was white. The jury was presented with evidence that a person can travel a mile on foot in 20 minutes — the length of time between Parker's call to the police and the discovery of Peek about a mile from her home. And Parker testified that she did not know Peek and could have been mistaken about his name.

Notwithstanding Peek's contentions, we find that a rational trier of fact could conclude beyond a reasonable doubt that he burglarized Parker's home.[5]

2. During closing argument, the prosecutor stated: "[Peek] saw a

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citations and punctuation omitted.) *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847) (1996).

[3] OCGA § 16-7-1.

[4] See OCGA § 24-4-6.

[5] See *Jackson v. State*, 236 Ga. App. 260, 261-262 (511 SE2d 615) (1999).

bunch of folks while he was window shopping uptown, a lot of folks, didn't stop to talk to them, and he didn't bring any one of them here today. Not one person came up on that witness stand and said, 'Well, you know, the lady got burglarized, but. . . .' " In response to this argument, Peek's trial counsel made a motion for mistrial. The trial court denied the motion for mistrial but instructed the jury to disregard that portion of the prosecutor's argument. The prosecutor then completed his argument without further objections.

Because the motion for mistrial was not renewed after the curative instructions, the denial of the motion was not preserved for appellate review.[6]

3. OCGA § 15-12-135 (a) provides, "All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law." Peek asserts that one of the jurors in his trial, Bobby Mapp, was his stepfather and should have been disqualified.

Without deciding the merits of this issue, we note that the record does not show that Mapp is related to Peek.[7] "[Peek] has the burden 'to affirmatively show asserted error by the record. [Because he has] failed to demonstrate support in the record for this [claim], we find no error.' [Cits.]"[8]

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

### ON MOTION FOR RECONSIDERATION.

Peek contends that contrary to this court's determination in Division 2 of the above opinion, he did preserve the issue of whether the trial court erred in failing to grant his motion for mistrial, which was based on comments made by the prosecutor in closing argument. As stated in Division 2, Peek did not renew his motion for mistrial. But, in his motion for reconsideration, Peek directs this court's attention to a portion of the transcript after proceedings in his trial and sentencing were concluded. There, Peek's counsel asked the court to have the record reflect that he preserved his objection to the denial of the mistrial, noting that the judge had a practice of "reserv[ing] any defense exceptions without unnecessary repetitiveness on the part of defense counsel." The judge stated that he believed the issue had been sufficiently preserved and instructed the court reporter to "put

---

[6] *Anderson v. State*, 236 Ga. App. 679, 685 (7) (513 SE2d 235) (1999); *Yarbrough v. State*, 241 Ga. App. 777, 780 (3) (527 SE2d 628) (2000).

[7] Neither jury selection nor the hearing on Peek's motion for new trial was transcribed.

[8] *Sirmans v. State*, 244 Ga. App. 252, 256 (4) (534 SE2d 862) (2000).

on the . . . transcript that defense counsel renewed [the] motion."

As an initial matter, we find that for the protection of his client, counsel would have been well advised to assure the preservation of his objection before the conclusion of both the trial and the sentencing. Moreover, we note that the need to consider this matter on motion for reconsideration could have been avoided if counsel had complied with Court of Appeals Rule 27 (a) (1), which requires the appellant to state in his brief the method by which each enumeration of error was preserved for appellate review. " '[I]t is not the function of this court to cull the record on behalf of a party.' "[9] However, we shall address the merits of Peek's claim.[10]

Peek argues that under *Blige v. State*,[11] it was improper for the prosecutor to state that he did not call any witnesses who had seen him window shopping because the record did not contain evidence that there were identifiable persons who could testify that he was window shopping as he said when the burglary was committed. *Blige* was concerned with counsel making arguments regarding facts not in evidence.[12] There, the Supreme Court of Georgia held in part that a foundation was required for the prosecutor's argument that the defendant would have called a fingerprint expert if the expert's testing had been favorable to him.[13] It does not appear that the record contained evidence that the defendant had actually retained an expert witness to analyze fingerprint materials. Nevertheless, the court found that the statement was proper as being only a comment on the defense's failure to rebut the State's fingerprint evidence.[14]

So long as it does not comment on the failure of the defendant to testify,[15] the prosecution may properly argue that its evidence of the defendant's guilt has not been rebutted or contradicted.[16] Case law also reflects that when the defendant testifies to the existence of a witness who has knowledge of material and relevant facts and that person does not testify at trial, the prosecution may comment on the defendant's failure to produce that witness.[17]

" 'In passing on a motion for mistrial because of an improper

---

[9] *Chastain v. State*, 237 Ga. App. 640 (516 SE2d 362) (1999).

[10] See generally *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999).

[11] 263 Ga. 244 (430 SE2d 761) (1993).

[12] Id. at 245 (2).

[13] Id.

[14] Id. at 244-245 (1).

[15] An argument is considered an improper comment on the defendant's failure to testify if the manifest intent of the prosecutor's statement was to comment on the defendant's failure to testify or if the character of the statement was such that the jury would naturally and necessarily take it as a comment on the defendant's failure to testify. *Ranger v. State*, 249 Ga. 315, 319 (3) (290 SE2d 63) (1982).

[16] *Elam v. State*, 211 Ga. App. 739, 741 (3) (440 SE2d 511) (1994).

[17] *Morgan v. State*, 267 Ga. 203, 206 (3) (476 SE2d 747) (1996).

statement of a prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury. [Cits.]' "[18] Here, the trial judge specifically instructed the jury to disregard the disputed argument and asked the prosecutor to move on to a different matter.[19] Even if we assume that the disputed argument was impermissible, we cannot say that the judge's actions were clearly inadequate to prevent harm from ensuing to Peek.[20] Thus, we find no error on this ground and deny Peek's motion for reconsideration.

*Motion for reconsideration denied.*

DECIDED NOVEMBER 8, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000.

*Robert E. Surrency*, for appellant.
*Fredric D. Bright, District Attorney, Wilson B. Mitcham, Jr., Assistant District Attorney*, for appellee.

---

[18] *Chancey v. State*, 256 Ga. 415, 435 (10) (349 SE2d 717) (1986).
[19] The judge would not comment on whether the law allowed the prosecutor to make the disputed argument.
[20] See generally *Chancey*, supra (curative instruction found sufficient under circumstances to protect appellant from prejudicial effect of improper argument).