## A01A2156. CORTEZ v. THE STATE.
### (561 SE2d 142)

MIKELL, Judge.

Indicted for malice murder and felony murder, Abel Hernandez Cortez was convicted of the lesser included offense of voluntary manslaughter. On appeal from the denial of his motion for new trial, Cortez argues that the trial court erred in (1) admitting his custodial statement, (2) allowing his statement to be reread to the jury during its deliberations, (3) charging the jury that intent to kill may be inferred from the use of a deadly weapon, (4) pressuring the jury into reaching a unanimous verdict, (5) admitting certain photographs into evidence, and (6) denying his ineffective assistance of counsel claim. Finding no error requiring reversal, we affirm.

Construed most favorably to upholding the verdict, the evidence shows that on August 30, 1999, around 10:30 p.m., Cortez went to an apartment in Stone Mountain looking for a co-worker named Jose Luis Aguilar. Aguilar resided at the apartment with several relatives, including his sister, Graciela Aguilar Hernandez ("Graciela"); her husband, Aquiles Rubio Garcia ("Aquiles"); their three small children; Aquiles's nephew, Joel Rubio; Graciela's father, Luis Aguilar Comacho; and the victim, Hermenegildo Soto.

Aquiles testified that he answered the door and told Cortez that Aguilar was not home. Cortez was not convinced, and he became upset. According to Aquiles, Soto, who had been drinking beer with the men on the patio, urged Cortez to leave, but Cortez started shoot-

---

[29] *Holloway v. State,* 245 Ga. App. 510, 513 (2) (b) (537 SE2d 708) (2000).

ing. The first shot struck the door. Soto advanced toward Cortez, who took a few steps backward and fired three more shots. Soto was struck once in the chest; he was able to walk to the backyard, where he collapsed against a tree and died. Aquiles and Rubio attacked Cortez, managed to wrestle the gun from him, and battered him. Cortez was hospitalized for three days due to the injuries he sustained in the beating.

Aquiles testified that he discovered later that Aguilar had been at home asleep in a bedroom when Cortez arrived. Aguilar testified that he came home that evening around 10:00 p.m., went straight to bed without speaking to anyone, and emerged only when he heard shots fired. Aguilar also testified that he did not see Cortez on the day of the shooting and did not know why Cortez was looking for him.

Graciela testified that she and the children were in a bedroom when the first shot was fired. She locked the children in the bedroom, ran out the back door of the apartment, and saw Aquiles. Cortez, who was running away from the apartment, began shooting in her direction. Graciela testified that she saw Comacho and Soto pursue Cortez and that Cortez shot at Comacho, hitting the ground near his feet.

Aquiles asked Graciela to call the police. Rubio handed her a telephone and then went after Cortez as well. Graciela called 911. While she was waiting for the operator to find a Spanish-speaking interpreter, she noticed Soto bleeding profusely. Graciela tried to help him inside, but he fell. By that time, Aquiles and Rubio were holding Cortez. Graciela testified that she did not notice Aguilar until the police arrived.

. Rubio testified that he was on the patio when Cortez arrived. Rubio overheard Aquiles tell Cortez not to get upset and to leave a message for Aguilar. Then Rubio heard shots fired, he testified. Rubio called the police. He heard more shots fired while he was on the phone but could not see what transpired. Two gunshots can be heard on the recording of Rubio's telephone call to 911, which was introduced into evidence. After making the call, Rubio testified, he went into the yard and saw Aquiles beating Cortez. Rubio helped Aquiles subdue Cortez and take his gun. The police arrived shortly thereafter.

DeKalb County Police Officer Stan Hall was the first to arrive on the scene. He observed Soto lying under a tree and Cortez lying on the sidewalk 20 yards away. Hall also saw two Hispanic males holding Cortez down. Rubio, who had wrapped the gun in his t-shirt, gave it to the officer. Detective D. M. Bradbury testified that he appeared briefly at the scene but was soon dispatched to Grady Hospital to check on Cortez. There, nurses found six rounds of live ammunition in Cortez's clothing, which they gave to Bradbury.

Veronica Nelson, who lived in the apartment above Aquiles's,

testified that she heard a gunshot coming from the downstairs patio, which was directly below her bedroom window. She ignored the first shot, but called 911 after hearing three more shots fired. Nelson testified that after the shooting was over, she heard a "commotion . . . as though they were having a tussle or something because there was knocking against the wall." Nelson heard no arguing or fighting before the shots were fired. Cortez did not testify at trial.

1. In his first three enumerations of error, Cortez challenges the admission of his custodial statement into evidence. In the statement, Cortez admitted firing four shots into the group of men, but claimed he did so only after being punched in the back of the head. He also claimed that he fired the shots in rapid succession as he was running away.

(a) Cortez contends that his custodial statement should have been suppressed because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. We disagree.

> The standard for determining the admissibility of confessions is the preponderance of evidence. To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.

(Citations and punctuation omitted.) *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999).

The trial court did not err in concluding by a preponderance of the evidence that Cortez's custodial statement was knowingly and voluntarily given. See *Moreno v. State*, 251 Ga. App. 352 (553 SE2d 387) (2001). The uncontroverted evidence introduced during a *Jackson-Denno* hearing showed that before making his statement, Cortez, who speaks only Spanish, was informed of his *Miranda* rights in Spanish by an officer who is fluent in that language. Cortez stated that he understood those rights and voluntarily signed the Spanish *Miranda* form. There is no evidence that Cortez was threatened or coerced into making a statement. Indeed, the Spanish-speaking officer testified that Cortez was "extremely cooperative."

Cortez claims that his statement was involuntary because he made it immediately upon his release from the hospital, while he was recovering from injuries sustained during the melee after the shooting. However, the arresting officer testified at the *Jackson-Denno* hearing that before making his statement, Cortez was asked whether he was under the influence of pain medication, and Cortez indicated that he was not. The Spanish-speaking officer testified that although

Cortez had cuts and bruises, he was coherent and relaxed, and he appeared to understand all the officer said to him. As Cortez did not testify, the officer's testimony was uncontroverted. It follows that the trial court did not err in refusing to suppress his statement on this ground.

(b) Cortez next asserts that his statement was inadmissible because the arresting officer failed to advise him of his right to contact the Mexican consulate, a violation of the Vienna Convention and the 1943 Treaty with Mexico. However, Cortez failed to raise this issue during the *Jackson-Denno* hearing or at any other time during trial. Therefore, the claim has not been preserved for appellate review. *Sims v. State*, 242 Ga. App. 460, 462 (2) (530 SE2d 212) (2000); *Backey v. State*, 234 Ga. App. 265, 266 (2) (506 SE2d 435) (1998). Moreover, even if Cortez had not waived this issue, it is meritless. In *Villegas v. State*, 273 Ga. 824, 826 (6) (546 SE2d 504) (2001), the Supreme Court noted that in general, "international treaties do not create individual rights which are privately enforceable in court proceedings." The Court went on to hold that even assuming that a failure to inform a foreign suspect of his right to call the consulate violates the Vienna Convention, such a violation does not require the suppression of his statement. Id.

(c) Cortez testified at the hearing on the motion for new trial that he was tricked into signing the statement and that it contained information that was added after he signed it. He argued for the first time that because the statement was written for him in English and not Spanish, its admission rendered his trial fundamentally unfair. However, no evidence admitted at trial supports Cortez's allegations. Thus, the trial court did not err in refusing to suppress his statement on the ground that it was not written in Spanish.

2. Cortez's fourth enumeration of error challenges the admission into evidence of three photographs of the victim's bloody shirt. Counsel objected at trial that the photographs were unnecessarily duplicative. As the photographs depicted different views of the shirt, the trial court did not abuse its discretion by admitting them. See *Jackson v. State*, 270 Ga. 494, 498 (8) (512 SE2d 241) (1999); *Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994).

3. In his fifth enumeration of error, Cortez argues that the trial court erred in charging the jury as follows:

> You may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of that person's intentional act. And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily

used and thereby causes the death of a human being, you may infer the intent to kill. Whether or not you make any such inference is a matter solely within the discretion of the jury.

The state argues that Cortez has waived any error by failing to object to the charge when it was given. We disagree. "Contrary to the State's assertion, the appellant was not required to object to the charge in order to preserve the issue for appeal. In a criminal case, defense counsel is not required to object immediately to the charge but may reserve the right to object on appeal." *Sweat v. State*, 173 Ga. App. 441, 442 (326 SE2d 809) (1985). In this case, defense counsel reserved her right to raise other objections to the charge and raised this specific objection during the hearing on the motion for new trial. Accordingly, the issue has been preserved for appeal.

The Supreme Court declared the giving of the charge at issue error in *Harris v. State*, 273 Ga. 608, 609 (2) (543 SE2d 716) (2001). The state argues that *Harris* is distinguishable because the defendant in that case was convicted of malice murder, whereas Cortez was convicted of the lesser included offense of voluntary manslaughter. However, "[i]ntent to kill is an essential element of both murder and voluntary manslaughter." (Punctuation omitted.) *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000). It follows that the trial court erred in giving the charge.

However, the error does not require reversal because the state presented overwhelming evidence of Cortez's intent to kill. The uncontroverted evidence shows that Cortez arrived at the victim's apartment with a loaded, newly purchased weapon. The medical examiner testified that the victim was shot from a distance of at least two feet. This testimony supports the jury's rejection of Cortez's claim that he shot in self-defense. Moreover, Cortez paused after he fired the first or second shot, as can be heard in the background on the tape of Rubio's call to 911. This fact is further corroborated by Nelson's testimony. In summary, all of the evidence contradicts Cortez's statement that he "wasn't shooting at anybody." Accordingly, the erroneous jury charge was harmless.

4. In his sixth enumeration of error, Cortez argues that the trial court erred in permitting Cortez's statement to be reread to the jury during its deliberations. There was no error. "It has been recognized for more than 100 years that it is permissible for the trial judge, in his discretion, to permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations." (Punctuation omitted.) *Parker v. State*, 248 Ga. App. 748, 752 (5) (548 SE2d 634) (2001). Moreover, after reading Cortez's statement, the trial court in this case cautioned the jury to consider

it together with all the other evidence in the case. Therefore, the evidence was not unduly emphasized, as Cortez claims. Finally, Cortez has shown no "special circumstances" that would make it unjust to allow the jury to revisit the evidence. *Watkins v. State*, 273 Ga. 307, 310 (3) (540 SE2d 199) (2001).

5. In his seventh enumeration of error, Cortez contends that the trial court pressured the jury into reaching a verdict. We disagree. The record shows that the jury deliberated for approximately one hour on Wednesday, July 26, 2000. Deliberations resumed the following morning. At noon, the jury indicated it had reached an impasse. A lunch break was taken. Shortly after the jurors returned, they again announced a deadlock. The court stated that the jury would not be kept indefinitely but would need to deliberate further. The court then gave a modified *Allen*[1] charge. Counsel did not object to the charge or move for a mistrial. About an hour later, the jury sent the court another note stating it was deadlocked. The court instructed the jury that the court was not prepared to accept that the jury was hopelessly deadlocked until it had a chance to consider the case overnight. The jury returned its verdict the following morning. Where, as here, there was no motion for mistrial, no objection to the court's *Allen* charge, and the length of deliberations was not excessive, there was no abuse of the trial court's discretion in allowing the jury to continue to consider the case. *Clifford v. State*, 266 Ga. 620, 622 (4) (469 SE2d 155) (1996).

6. Cortez lastly assigns error to the trial court's denial of his motion for new trial on the grounds of ineffective assistance of counsel. Cortez asserts trial counsel was ineffective by failing to (a) move to suppress his statement on the ground that it was obtained in violation of the Vienna Convention and 1943 Treaty with Mexico, (b) advise Cortez to testify at the *Jackson-Denno* hearing, and (c) object to the admission into evidence of the six bullets found in Cortez's possession.

To establish ineffectiveness, an appellant must show not only that his counsel's performance was deficient, but also that the deficiency prejudiced him. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997). "Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim." *Lawrence v. State*, 238 Ga. App. 102, 104 (3) (517 SE2d 822) (1999). "Moreover, a defendant must overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional conduct." Id. Unless it was clearly erroneous, the trial court's determina-

---

[1] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

tion that a defendant was afforded effective assistance of counsel will not be reversed on appeal. *Hall v. State*, 243 Ga. App. 804, 805 (534 SE2d 196) (2000).

(a) The Vienna Convention and the 1943 Treaty with Mexico. Given the holding in *Villegas*, supra, that international treaties do not create privately enforceable individual rights, and the fact that no Georgia precedent authorizes the exclusion of a defendant's statement for a violation of this treaty, counsel's performance cannot be deemed deficient for failure to argue the issue in the trial court.

(b) At the hearing on the motion for new trial, trial counsel testified that she did not advise Cortez to testify at the *Jackson-Denno* hearing because he had told her conflicting stories concerning his custodial statement. During her first interview with Cortez, he admitted that his custodial statement was accurate. Later, Cortez claimed that "he had not brought the gun and he couldn't imagine where the bullets came from that were found in his pocket at the hospital." As trial counsel could not ascertain which version Cortez would give at the *Jackson-Denno* hearing, she feared that his testimony might damage his case, counsel testified. The trial court correctly concluded that counsel's decision in this regard was a matter of sound trial strategy.

(c) Counsel's failure to object to the state's failure to prove the chain of custody of the six bullets found in Cortez's possession poses a closer question. Trial counsel testified that she investigated the chain of custody of the bullets, determined that the state would be able to prove it at trial, and decided not to object as a matter of trial strategy. Trial counsel testified that she reviewed the medical records, which reflected that a hospital staff member found the bullets and turned them over to the police. She could not recall whether she stipulated to the admission of the bullets, but noted that it would have been a simple matter for the state to produce the witnesses.

> The standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result.

(Citations and punctuation omitted.) *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998). "[S]trategic choices made after thorough investigation are virtually unchallengeable." (Punctuation omitted.) *Stephens v. State*, 265 Ga. 120, 121-122 (2) (453 SE2d 443) (1995).

Giving counsel the full benefit of presumptively reasonable performance, we conclude that her failure to raise a chain of custody objection to the admission of the bullets did not fall below an objective standard of reasonableness. Moreover, Cortez has failed to show that the outcome of the trial would have been different but for trial counsel's alleged deficiency. Accordingly, the trial court did not err in refusing to grant Cortez a new trial based on his claim of ineffective assistance of counsel. *Rogers v. State*, 210 Ga. App. 164 (435 SE2d 457) (1993).

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 13, 2002.

*Charles H. Frier*, for appellant.

*J. Tom Morgan*, District Attorney, Jeanne M. Canavan, Priscilla E. Carroll, Assistant District Attorneys, for appellee.