## A02A0669. BISWAS v. THE STATE.

(565 SE2d 531)

MIKELL, Judge.

Madhu Biswas was indicted on two counts of murder, two counts of felony murder, and two counts of aggravated assault for the shooting deaths of his two adult sons. A jury found him guilty of two counts of voluntary manslaughter, as lesser included offenses of the malice murder counts, and convicted him of the remaining charges of felony murder and aggravated assault. The court sentenced Biswas to 25 years confinement. Biswas appeals from the denial of his motion for new trial, arguing that the trial court erred in allowing the testimony of his wife without advising her of the marital privilege, in allowing the state to comment on Biswas' failure to produce evidence, in instructing the jury on impeachment by prior contradictory statements and on the inference that may be drawn from the use of a deadly weapon, and in failing to charge the jury on the principle of retreat. He also argues that he was denied effective assistance of counsel. We affirm the conviction.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

So viewed, the evidence shows that Biswas had lived in the United States for approximately 15 years after moving from India. On the night of March 15, 1999, the police were called to Biswas' home, where they found the defendant's two sons lying on the floor with gunshot wounds. One son, Sujit Biswas, was already dead, and the other, Sujoy Biswas, died later that night at Grady Memorial Hospital.

Biswas was home and spoke with the police. Biswas told Detective John Paul Hughes that he arrived home from work at approximately 10:45 p.m. and found his front door open and his two sons, ages thirty and twenty-eight, lying on the floor bleeding; that he immediately ran to the Brookhaven MARTA station to call the police; and that there were no guns in the house. Detective Hughes noticed blood on Biswas' shoes and jacket.

A uniformed officer took Biswas to the DeKalb County Police Department, where Biswas was interviewed by Detective Scott Gassner. After waiving his *Miranda* rights, Biswas told Detective Gassner that he returned home from work to find his sons on the

floor and "plenty of blood." He also told the detective that he did not touch his sons or anything in the house; that he had to call the police from the MARTA station because the telephone at his house did not work; that his wife had been in India since November 1998; and that he had no idea why someone would want to hurt his sons.

While Biswas was at the police department, Detective Hughes obtained a search warrant for the home. There, police found a gun in a briefcase under Biswas' bed. They also found a box of bullets in the briefcase and determined that six were missing. According to Detective Hughes, Biswas became a suspect at that point in the investigation.

Detective Hughes proceeded to the police department, where he confronted Biswas. Detective Hughes testified: "I advised him that we found his gun, that it had blood on it, and at that time he advised me that he killed his sons." The detective informed Biswas of his *Miranda* rights again and began a taped interview. At trial, the state played the audiotape of the interview, in which Biswas told Detective Hughes that he understood his *Miranda* rights and waived them; that he had lied to Detective Gassner; that his sons beat him on numerous occasions; that his wife, who was in India, actually sent his sons to beat him; that he had been to the hospital twice as a result of the beatings; that he purchased a gun and bullets at a pawnshop that morning; that he was angry with his sons; and that he planned to shoot them. Biswas also said that he returned home that night to find that his sons had broken some of his things; that they refused his request for money to pay the utility bills; that they began hitting him; and that he went into the kitchen, where his sons assaulted him with knives. Biswas said that he went to his bedroom and loaded the gun, and his sons yelled that they were going out to drink. According to Biswas, he proceeded to their bedroom with the gun in his pocket and shot both of his sons. Next, he put the knives back in a drawer in the kitchen, washed his hands, put the gun back in the briefcase, and walked to the MARTA station to call the police. He threw the empty shell casings in a trash can at the station. Biswas told the detectives that he suffered from high blood pressure and that he had sacrificed everything for his family.

Alex Sporing, an employee of Jerry's Pawn Shop, testified that he sold Biswas a Rossi .357 Magnum revolver on March 15, 1999. Bernadette Davy, a firearms examiner at the state crime laboratory, testified that the bullets found in the bodies of Biswas' sons were fired from the Rossi .357 Magnum found in the briefcase under the bed.

Dr. Gerald Thomas Gowitt, the chief medical examiner for DeKalb County, performed the autopsy on Sujit, the son who died at the scene. Dr. Gowitt testified that Sujit suffered three gunshot

wounds: one to his head, one to his neck, and one to his chest, and that the wounds to the head and neck caused his death. Dr. Steven Frank Dunton performed the autopsy on Sujoy, who died at the hospital. Dr. Dunton testified that Sujoy also suffered gunshot wounds to the head, neck, and chest.

Biswas' wife, Kalpana, testified through an interpreter that she and the defendant had been married for forty years; that they also had a daughter who lived in India; that Biswas left India when their older son, Sujoy, was about four years old; that she moved from India to join her husband in Atlanta in 1993; and that their two sons came to Atlanta in 1997. According to Kalpana, both Sujoy and Sujit returned to India to marry, and their wives remained there in a house she owned. She further testified that she was in India when Biswas killed their sons and that she had never seen her sons beat her husband. On cross-examination, Kalpana testified that Biswas paid for their sons' education, supported the entire family in India, and was a loving father.

The state introduced letters Biswas wrote to his wife, daughter, and son-in-law, in which he complained about his sons and the fact that he had to work while he was in poor health. In the letters, he insisted that Kalpana transfer ownership of the house in India to him and said that the "situation will be really bad" if she did not.

The only defense witness was Sudhir Debnath, an acquaintance of Biswas who was also from India.[1] Debnath, who had met Biswas' wife and sons, testified that Biswas worked two jobs; that his sons did not work at all while they lived in India; and that Biswas had been very excited for his sons to come to Atlanta. Debnath explained that in India, parents are dependent on their children because there is no social security system, and that it is expected that adult children will support their parents once they start working. Debnath had no personal knowledge of Biswas' relationships with his sons and his wife.

1. In his first enumerated error, Biswas contends that the court erred in allowing Kalpana Biswas to testify. He suggests that his wife's testimony was not voluntary because she was under subpoena and that she was not given the opportunity to exercise her marital privilege to refuse to testify against him. We find no error.

As a preliminary matter, the defense did not raise the issue of the marital privilege or object to Kalpana's testimony at trial. Accordingly, this issue has been waived. See *Werts v. State*, 196 Ga. App. 452, 454 (8) (395 SE2d 922) (1990). Furthermore, even if Biswas

---

[1] Debnath testified that he had been friends with Biswas, but that their relationship became strained after he loaned Biswas money, and it took four years for it to be repaid. Debnath broke off contact with Biswas before Sujoy and Sujit came to Atlanta in 1997.

had objected to his wife's testimony, it would have been proper for the court to allow it.

OCGA § 24-9-23 (a) provides that "[h]usband and wife . . . shall not be compellable to give evidence in any criminal proceeding . . . against each other." Significantly, "[t]he privilege of refusing to testify belongs to the witness, not to the defendant." *Brown v. State*, 261 Ga. 66, 70 (5) (b) (401 SE2d 492) (1991). In this case, Kalpana did not invoke her privilege, and there is no evidence that she was denied the opportunity to do so. We have expressly held that a spouse may waive her privilege by voluntarily taking the stand and testifying. *Duncan v. State*, 232 Ga. App. 157, 158 (1) (500 SE2d 603) (1998). See also *White v. State*, 211 Ga. App. 694, 695 (2) (440 SE2d 68) (1994) (when the defendant's wife voluntarily takes the stand and testifies, it is presumed that she has waived the marital privilege). There is no evidence that Kalpana's testimony was not voluntary.

Biswas argues that the trial court was required to make an express finding, on the record, that Kalpana had waived her marital privilege; however, his argument is not supported by the law. See *Duncan*, supra; *White*, supra. Further, Biswas' reliance on *King v. State*, 231 Ga. App. 775 (501 SE2d 19) (1998), is misplaced, as that case involved a defendant's waiver of his right to counsel and election to proceed pro se and not a witness' waiver of her marital privilege. Accordingly, we affirm the conviction on this ground.

2. Next, Biswas contends that the court erred in permitting the state to comment on his failure to present medical records to corroborate his claim that his sons beat him. In her closing argument, the prosecutor stated: "But where are those medical records? Where are the medical records that Mr. Biswas told the police should be out there?" Counsel for Biswas objected on the ground that the state was shifting the burden of proof to the defense. The court overruled the objection but reminded the jury that the burden never shifted to Biswas to prove anything. We find no error.

As a general rule, "[s]o long as it does not comment on the failure of the defendant to testify, the prosecution may properly argue that its evidence of the defendant's guilt has not been rebutted or contradicted." (Footnotes omitted.) *Peek v. State*, 247 Ga. App. 364, 367 (542 SE2d 517) (2000). In *Ponder v. State*, 268 Ga. 544, 546 (2) (491 SE2d 363) (1997), the Supreme Court held that the prosecutor could comment on a defendant's "failure 'to produce certain witnesses when the defendant testifies to the existence of a witness with knowledge of material and relevant facts, and that person does not testify at trial.' (Cit.)" (Emphasis omitted.) Id., citing *Morgan v. State*, 267 Ga. 203, 206 (3) (476 SE2d 747) (1996). In order to make such a comment, "the argument must be derived from evidence properly before the factfinder." *Morgan*, supra.

In the case sub judice, Biswas' statement to the police was admitted into evidence. In that statement, Biswas told Detective Hughes that he had been to the hospital twice as a result of being beaten by his sons. Therefore, the prosecutor's comment that Biswas failed to present any medical records was derived from evidence properly before the jury. See *Duncan v. State*, 271 Ga. 16, 17 (2) (515 SE2d 388) (1999). Accordingly, the court did not err in overruling Biswas' objection.

3. Biswas contends that the court erred in giving the following instruction on impeachment to the jury:

> To impeach a witness is to . . . prove that the witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified, or by proof of contradictory statements previously made by the witness as to matters relevant to the witness' testimony and to the case. If any attempt has been made in this case to impeach any witness by proof of contradictory statements previously made, you must determine from the evidence, first, whether any such statements were made; secondly, whether they were contradictory to any statements the witness made on the witness stand; and, thirdly, whether it is material to the witness' testimony and to the case.

Biswas argues that the charge was given in error because he did not testify at trial, and, therefore, it could be applied only to his statements to the police.

First, we conclude that Biswas has waived this argument. Initially, the defense submitted a request to charge on impeachment by proof of contradictory statements. The record shows that defense counsel withdrew the proposed instruction during the charge conference, but then she agreed with the state and the court that the charge would be given. "One cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing." (Citations and punctuation omitted.) *Williams v. State*, 199 Ga. App. 122, 124 (3) (404 SE2d 296) (1991).

Furthermore, any error committed in giving the charge was harmless. Biswas did not testify at trial; thus, there was no testimony to be impeached. Additionally, Biswas admitted in his third statement to the police that he had lied in his first two statements when he said he did not know who killed his sons. During its closing argument, the defense agreed that Biswas' first two statements to the police were false. Biswas is correct that a prior inconsistent statement does not become impeaching until the witness testifies. *Burney v. State*, 252 Ga. 25, 26 (3) (310 SE2d 899) (1984). Here, there was

simply no testimony to which the jury would have mistakenly applied the charge. Biswas has not alleged any error regarding the admission of the first two statements that he gave to the police.

4. Next, Biswas assigns error to the court's jury charge on the inference of the intent to kill from the use of a deadly weapon. The court instructed the jury as follows:

> You may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of a person's intentional acts, and if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill.

First, the state argues that Biswas failed to preserve this issue for appeal. We disagree. "Contrary to the State's assertion, the appellant was not required to object to the charge in order to preserve the issue for appeal. In a criminal case, defense counsel is not required to object immediately to the charge but may reserve the right to object on appeal." *Sweat v. State*, 173 Ga. App. 441, 442 (326 SE2d 809) (1985). Here, the defense reserved "any and all objections" to the jury charge. Accordingly, the issue is properly before us on appeal.

In *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001), which was decided almost one year after Biswas' trial, the Supreme Court held that giving the above charge was error and reversed the defendant's conviction of malice murder. The Court held that the error was harmful, because the evidence of malice was weak.

In this case, the state argues that *Harris* does not apply because Biswas was convicted of voluntary manslaughter and not malice murder. However, in a recent decision, *Cortez v. State*, 253 Ga. App. 699, 703 (3) (561 SE2d 142) (2002), we held that *Harris* applied when a defendant was convicted of voluntary manslaughter as a lesser included offense of malice murder. We reasoned that "intent to kill is an essential element of both murder and voluntary manslaughter." (Punctuation omitted.) Id., citing *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000). It follows that the trial court in this case erred in giving the charge.

However, the error does not require reversal because there was overwhelming evidence of Biswas' intent to kill. See *Cortez*, supra. Biswas admitted to Detective Hughes that he shot and killed his sons and that he bought a gun the morning of the shootings with the intent to kill them. Therefore, the jury had no need to rely on an inference drawn from the use of a deadly weapon, because they had

direct evidence of Biswas' intent to kill. Accordingly, the erroneous jury charge was harmless.

5. Biswas contends that the court erred in failing to charge the jury on the principle of retreat. We have held that "[c]ase law is clear that where self-defense is the sole defense, and the issue of retreat is raised by the evidence or placed in issue, the defense is entitled to a charge on the principles of retreat as set forth in *Glover v. State*, 105 Ga. 597 (31 SE 584) (1898)." *Jackson v. State*, 237 Ga. App. 746 (516 SE2d 792) (1999). *Glover* held that one who is free from fault

> may, without retreating, take human life and be justifiable, if the circumstances are sufficient to excite the fears of a reasonable man that a felonious assault is about to be made upon him, and the slayer, who is free from blame, acts under the influence of such fears, with the bona fide purpose of preventing the felony from being committed upon him.

Id. at 598-599 (2).

In this case, during its closing argument, the prosecution stated that Biswas could have left the house without killing his sons. Biswas argues that because the state placed the issue of retreat into question, he was entitled to a jury charge on the issue even though he did not request it. See *Jackson v. State*, supra at 747. We disagree.

In *Jackson v. State*, supra, we held that "[i]n those circumstances where the omission is clearly harmful as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence, this Court will consider and review the charge even though there was no timely objection in the trial court." In *Jackson v. State*, we based our decision on the fact that the evidence against the defendant was not overwhelming. Such is not the case here. Biswas admitted to Detective Hughes that he planned to shoot his sons when he purchased the gun that morning and that he was angry with them. Based on the overwhelming evidence of Biswas' guilt, we conclude that the omission of the charge was not harmful as a matter of law.

6. Finally, Biswas contends that the trial court erred in denying his motion for new trial because he was denied effective assistance of counsel. He raises two alleged deficiencies in his trial counsel's performance.

> To establish ineffectiveness, a defendant must prove that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reason-

able probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies.

*Hardegree v. State*, 230 Ga. App. 111, 113 (4) (495 SE2d 347) (1998). "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous." (Citations and punctuation omitted.) *Williams v. State*, 234 Ga. App. 191, 193 (2) (506 SE2d 237) (1998). Bearing these principles in mind, we find no merit to Biswas' claims.

(a) Biswas contends that trial counsel's performance was deficient because she did not advise or ask the court to advise Kalpana of her marital privilege not to testify against him. However, Biswas has failed to demonstrate that the outcome of the trial would have been different had his counsel advised his wife of the privilege. There is no evidence that Kalpana would have elected not to testify or that the absence of her testimony would have affected the verdict.

Additionally, we find that counsel's performance was not deficient. When asked why she did not advise the defendant's wife of her marital privilege, Biswas' trial counsel testified that she did not feel that it was her place to advise the state's witnesses of their rights. She further testified that she did not raise the issue of marital privilege to the court because she did not think that it was necessary or appropriate in light of the fact that Kalpana was in India at the time of the shootings. Counsel further explained that her office had spoken with the witness, who told them that she did not know of any allegations of abuse levied by her husband against their sons.

It is well settled that counsel's decisions on matters of trial tactics and strategy do not amount to ineffective assistance of counsel. *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999). See also *Aleman v. State*, 227 Ga. App. 607, 612 (3) (489 SE2d 867) (1997). We conclude that Biswas failed to demonstrate deficient performance or prejudice in connection with this claim.

(b) Next, Biswas claims that his trial counsel was ineffective for failing to object and move for a mistrial when the state argued that Biswas could have left the house rather than shooting his sons. Biswas claims that the argument was not supported by the evidence. OCGA § 17-8-75. We disagree.

There was evidence that Biswas elected to go to his bedroom, load the gun, and walk to his sons' bedroom to shoot them. Thus, the state's argument that Biswas could have left the house and called the police is a conclusion that could be logically drawn from the evidence and did not violate OCGA § 17-8-75. Failure to make a meritless objection is not evidence of ineffective assistance of counsel. *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001). Accordingly, this claim of ineffective assistance of counsel is without merit.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 10, 2002 — 

*Charles H. Frier*, for appellant.

*J. Tom Morgan, District Attorney, Elisabeth G. Macnamara, Barbara B. Conroy, Assistant District Attorneys*, for appellee.