A02A2325. BENHAM v. THE STATE.
(581 SE2d 586)

MIKELL, Judge.

After a jury trial, Jamerica Benham was convicted of aggravated assault and sentenced to ten years in confinement and ten years on probation. On appeal, Benham challenges the sufficiency of the evidence, the trial court's charge to the jury, and the court's failure to qualify the jury as to the victim and the prosecutor. Benham also contends that she was penalized for exercising her right to a jury trial, and that her trial counsel was ineffective. We affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court

---

determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[1]

So viewed, the record shows that on August 17, 2001, Farrah Kennemore and Benham got into an argument, during which Benham cut Kennemore's face, throat, and chest with a box cutter. Kennemore testified that her marriage to Ernest Kennemore, who was the father of two of Benham's children, had been the source of several previous arguments with Benham. On the day of the incident, Kennemore approached Benham, who was sitting in her car, and their conversation became heated. Kennemore testified that Benham initiated the fight by grabbing her shirt.

Benham, however, testified that Kennemore attacked her by clawing her face, after threatening to "whup [her] butt," and that she tried to fight back, but Kennemore would not let go of her face. Benham then grabbed a box cutter from her console and slashed Kennemore five times.

Lynn Moore, Kennemore's sister-in-law, witnessed the incident. She testified that Kennemore walked to the driver's side of Benham's car, and then suddenly, the women were fighting. She did not know who initiated the fight but recalled that Benham tried to drive away during the fight. Tonya Jones, another of Kennemore's sisters-in-law, testified that she was in her house with Kennemore when Kennemore said that she was going outside to confront Benham. Jones did not realize that the women were fighting until she heard her sister's comment that Kennemore was bleeding.

1. In her first two enumerations of error, Benham challenges the sufficiency of the evidence. A person commits the offense of aggravated assault when he assaults with a deadly weapon which, when used offensively against a person, is likely to or actually does result in serious bodily injury.[2] Kennemore testified that Benham assaulted her with a box cutter, cutting her face, neck, and chest. The state introduced eight photographs displaying cuts on Kennemore's face, wrist, neck, and chest. Though Benham testified that she was defending herself when she cut Kennemore with the box cutter, this testimony does not render the evidence against Benham insufficient. As we noted above, conflicts in the testimony of the witnesses are a

---

[1] (Footnotes omitted.) *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000).

[2] See OCGA § 16-5-21 (a) (2).

matter of credibility for the jury to resolve.[3] The evidence was sufficient to authorize a rational trier of fact to find Benham guilty beyond a reasonable doubt of aggravated assault.

2. Benham next argues that the trial court erred when it failed to qualify the jury as to whether any member of the jury had a relationship with Kennemore and the prosecutor.

> In *Ethridge v. State*, 163 Ga. 186 (1b) (136 SE 72) [(1926)], in a murder case the trial judge erroneously permitted a juror to serve where he was in fact legally incompetent because of relationship. The Supreme Court held that "When error is assigned, it must be shown that the plaintiff in error was in some way injured, or that there was an advantage to the state."[4]

Benham has not shown that any juror should have been disqualified to serve because of a relationship with the victim or the prosecutor. A fortiori, she cannot show that she was harmed or that the prosecution benefitted from the trial court's alleged error. Thus, we find no error.

3. In her fourth, sixth, seventh, and eighth enumerations of error, Benham argues that the trial court erred in its charge to the jury in four respects: (1) it failed to charge the jury on the defense of habitation; (2) it refused to give two of Benham's requested charges; and (3) it charged that a box cutter was a deadly weapon.

(a) Benham argues that the trial court should have charged the jury sua sponte on the defense of habitation. We disagree.

"The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."[5] In this case, however, it is evident from Benham's testimony that her defense was self-defense, not defense of habitation. Thus, the court's failure to instruct the jury on the defense of habitation was not error.[6]

(b) The trial court refused to give Benham's seventh request to charge, which stated as follows:

> Prior acts of violence admissible to corroborate justification defense. If the defendant's res gestae evidence establishes a

---

[3] *Roberts*, supra. See also *McLeod v. State*, 245 Ga. App. 668, 669 (1) (538 SE2d 759) (2000).

[4] *Geiger v. State*, 129 Ga. App. 488, 495 (2) (a) (199 SE2d 861) (1973).

[5] *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991), citing *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991); *Pippins v. State*, 224 Ga. 462, 465 (4) (162 SE2d 338) (1968).

[6] See *Johnson v. State*, 275 Ga. 630, 631 (3) (570 SE2d 309) (2002).

prima facie justification defense, evidence of the victim's prior acts of violence against the accused, or against third parties, may be relevant to corroborate the defendant's contention that he did not act with the requisite criminal intent.

In *Camphor v. State*,[7] the defendant asserted as error the court's failure to give a charge sua sponte about an alleged act of violence by the victim against the accused and its effect on the defendant's justification defense. Our Supreme Court held,

> [t]here was no duty in this instance to instruct the jury on prior violent acts by the victim. First, the court gave a complete instruction on justification and all other theories applicable to the evidence. . . . Furthermore, because the evidence was in dispute as to who was the aggressor, credibility was to be evaluated by the jury. Thus, such a charge, even if requested, could be construed as an improper comment by the court as to what has or has not been proved.[8]

Similarly here, the court instructed the jury on justification, self-defense, and the duty to retreat, and it also admitted evidence of Kennemore's alleged previous acts of violence against Benham for the jury's consideration. Thus, the refusal to give Benham's requested charge was not error.

(c) The trial court also refused Benham's requested charge that

> [w]hether fists or feet can be dangerous weapons under certain circumstances is not material to the issue of self-defense. The determining factor in self-defense is not whether the victim was using a deadly weapon, but whether the actor reasonably believed the amount of force he used was necessary to prevent death or great bodily harm to himself.

In support of this alleged error, Benham argues in her brief that the jury should have been allowed to determine whether fists and hands could be used as deadly weapons. However, the proposed charge does not support Benham's argument. Further, the trial court did give Benham's requested charge on self-defense, that "a person is justified in using force which is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is

---

[7] 272 Ga. 408 (529 SE2d 121) (2000).
[8] (Citation and punctuation omitted.) Id. at 413 (6) (a).

necessary to prevent death or great bodily injury to herself or a third person or to prevent the commission of a forcible felony." Accordingly, we find no error.

(d) The trial court charged the jury that "a box cutter if and when used in making an assault upon another person is not a deadly weapon per se, but may be — but may or not be a deadly weapon depending upon the manner in which it is used and the circumstances of the case." Benham argues that the charge was erroneous because it implied that hands and feet were not objects likely to cause death or serious bodily injury, which had the effect of restricting the amount of force that Benham was entitled to use to defend herself. As the challenged charge makes no reference, direct or indirect, to the use of hands or feet as deadly weapons, we find no merit in this enumeration.

4. In her fifth enumerated error, Benham contends that she was punished more severely because she exercised her right to a jury trial. In support of this error, Benham relies on the trial judge's comment that "you were that far from it. And then you didn't even have the gumption to take the responsibility. You're saying, oh, it's self-defense." Benham also points out that the sentence imposed was greater than that offered by the prosecutor prior to trial. Nonetheless, we find no error.

The trial judge's statements during the sentencing hearing indicate that the sentence she imposed was based upon the potentially life-threatening injuries that Benham caused by repeatedly slashing Kennemore with the box cutter in defense against Kennemore's slaps at Benham. "In the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged."[9] As for the negotiated plea, the trial judge indicated that she had no knowledge of the plea deal and imposed the sentence simply because it fit the crime. However, even had the trial judge known about the plea, we have held that

> a trial court does not engage in unconstitutional vindictiveness by imposing a harsher sentence following a jury trial than may have been imposed if the defendant had accepted a plea bargain. *Allen v. State*, 193 Ga. App. 670, 671-672 (388 SE2d 889) (1989). Rather, the trial court is merely following through on the inevitable and permissible threat which is implicit in any plea bargain situation — that rejection of the plea bargain may diminish or destroy the very

---

[9] (Citations and punctuation omitted.) *Arnold v. State*, 228 Ga. App. 470, 472 (1) (491 SE2d 819) (1997).

rationale for the imposition of a lenient sentence. Id. at 671.[10]

As Benham's sentence was within the statutory guidelines, which permit imprisonment for up to 20 years for an aggravated assault conviction,[11] we find no error.

5. Finally, Benham argues that her trial counsel was ineffective because she failed to: (1) introduce good character evidence; (2) request a charge on the defense of habitation; (3) object to the court's failure to qualify the jury as to the jury's relationship with the victim and prosecutor; (4) adequately prepare for trial; and (5) interview an eyewitness. We disagree.

"The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[12] "[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[13] Furthermore, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one [and its] finding of effectiveness must be upheld unless clearly erroneous."[14]

(a) Trial counsel testified that she did not call any character witnesses because she thought she would get sufficient favorable character evidence from the state's witnesses, who were all friends or relatives of Benham.

> The decision as to which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel. The fact that appellant and present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant

---

[10] (Punctuation omitted.) *Gidey v. State*, 228 Ga. App. 250, 253 (3) (491 SE2d 406) (1997).

[11] See OCGA § 16-5-21 (b).

[12] (Citations and punctuation omitted.) *Moody v. State*, 206 Ga. App. 387, 388 (1) (425 SE2d 397) (1992).

[13] (Citations omitted.) *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[14] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

received representation amounting to ineffective assistance of counsel.[15]

In this case, none of the witnesses made derogatory remarks about Benham's character or inferred, directly or indirectly, that Benham initiated the confrontation. Therefore, Benham has not shown that her trial counsel's decision not to call additional character witnesses was deficient.[16]

(b) Regarding the decision not to request a charge on the defense of habitation, trial counsel explained that she thought that

[Benham's] best defense was self-defense of her own person or third persons including her three children that were in the car. I didn't want the jury to get the impression that she had — or cared one whit about her vehicle. I was much more concerned with the jury believing that she was actively under attack and was in fear for her safety and that of her children and that's what we concentrated on.

"It is well settled that counsel's decisions on matters of trial tactics and strategy do not amount to ineffective assistance of counsel."[17]

(c) Trial counsel testified that the prosecutor qualified the jurors as to their relationship with himself and the victim, thus there was no need for her to ask those same questions. When the trial judge qualified the jury as to Benham only, however, she simply failed to object. As discussed in Division 2, Benham has offered no evidence that she was harmed or that the prosecution benefitted by the trial court's failure to qualify the jury as to its relationship with the victim or the prosecutor.[18] Even if trial counsel's failure to object rendered her performance deficient, however, Benham failed to demonstrate prejudice. Thus, trial counsel's mistake would not require us to reverse Benham's conviction.

(d) Benham argues that her trial counsel did not adequately prepare for trial. However, trial counsel testified that she met with Benham several times, including the Friday and Saturday before the trial started and on the day of trial. She also interviewed the state's

---

[15] (Citation and punctuation omitted.) *Hall v. State*, 243 Ga. App. 804, 806 (534 SE2d 196) (2000).

[16] See *Johnson v. State*, 266 Ga. 380, 382, n. 3 (467 SE2d 542) (1996) ("While we might regard trial counsel's decision not to call character witnesses on appellant's behalf as ill-advised and based on an evaluation of the evidence which hindsight shows to be incorrect, we nevertheless regard that decision as being a matter of trial strategy, which, even if erroneous, does not itself constitute a denial of effective assistance of counsel.").

[17] (Citations omitted.) *Biswas v. State*, 255 Ga. App. 339, 346 (6) (a) (565 SE2d 531) (2002).

[18] See *Geiger*, supra.

witnesses. Further, trial counsel testified that she felt adequately prepared to proceed to trial. Thus, we reject Benham's argument.

(e) Lastly, Benham argues that trial counsel's performance was deficient because she did not interview Benham's son. Trial counsel testified that on the Friday before the trial,

> [i]t was my understanding from talking to the state's witnesses that they were going to be able to testify very helpfully to the defense because of what they told me they had seen. And we had three of them, three adults, that were available to testify and . . . they were all going to testify to the same thing which would have been extremely helpful to Jamie's case.

The witnesses told trial counsel that they would testify that Kennemore started the fight. Thus, she felt that there was no need to talk to Benham's son.

"There is a strong presumption that counsel's conduct fell within the broad range of professional conduct,"[19] and as stated above, deciding which defense witnesses to call at trial "is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[20] However, even if we were to find that trial counsel should have interviewed Benham's son, Benham has not shown that the failure to do so would have changed the outcome of the case. This is especially so in light of Benham's admission that she cut Kennemore with the box cutter.

> [E]ffectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.[21]

Accordingly, we find that the trial court's conclusion that trial counsel did not render ineffective assistance of counsel was not clearly erroneous and affirm.[22]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[19] (Citation omitted.) *Harris v. State*, 268 Ga. 412 (490 SE2d 96) (1997).

[20] *Hall*, supra.

[21] (Citation and punctuation omitted.) *Polk v. State*, 225 Ga. App. 257, 258 (1) (a) (483 SE2d 687) (1997).

[22] See *Green*, supra.

DECIDED MARCH 13, 2003 — 

*David N. Vaughan, Jr., Lance T. McCoy*, for appellant.
*Bryant G. Speed II, District Attorney, Mary Beth Gregoire, Assistant District Attorney*, for appellee.