## A02A0011. ROSE v. THE STATE.

(564 SE2d 548)

PHIPPS, Judge.

A jury convicted Mary Lee Rose of aggravated assault and possession of a weapon during the commission of a crime. She appeals from the denial of her motion for new trial. Her sole claim of error is that the evidence was insufficient to support her conviction. Because we find that the evidence was sufficient, we affirm.

---

[13] OCGA § 40-13-53 (b) (1).
[14] OCGA § 40-6-186 (c).
[15] 172 Ga. App. 109, 110 (322 SE2d 1) (1984).

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility[2] but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3]

Viewed in this light, the testimony at trial showed that in the early morning hours of September 9, 2000, Ricky Shelton, Rose's boyfriend, was stabbed while he slept. He was not able to identify the person who stabbed him. On the evening of September 8, 2000, Shelton, Rose and a neighbor, Jeffrey McCormack, had been celebrating Shelton's birthday at the home he shared with Rose. McCormack resided in a camper parked in the couple's backyard which was supplied with electricity from their home. The threesome drank rum, and Shelton testified that he and Rose took the prescription drug Xanax as well. During the evening, Shelton and McCormack argued, purportedly about the amount of rum McCormack had consumed. Shelton told McCormack to leave and to remove the camper from his backyard. He also disconnected the power cord providing electricity to McCormack's trailer. Shelton testified that he and McCormack had argued on other occasions and that he had told McCormack to leave on other occasions, but had never followed through and made him leave.

Shelton testified that he had gone to bed and was startled awake in the early morning hours by an attacker. When he awoke, Rose was in the bed beside him, and "I was trying to fight somebody with hands and I was shoving [Rose] backward telling her to get up and go call somebody, somebody was hurting me, goes all the way across the bed, it quits and everything just stopped." He left Rose in the bedroom and went into the living room, and no one was there.

Realizing that he was badly hurt, Shelton then drove to a neighbor's home for help. He testified that he remembered seeing Rose walking around but that she "wasn't moving as fast as I was wanting her to." Shelton told his neighbor that he believed Rose also was hurt. He later told police that when he was leaving he heard Rose scream.

Soon after police arrived, McCormack and Rose were seen walking toward the residence. Rose approached a car driven by a detective and asked what was going on. When two other officers appeared on foot, she ran to one of them and said that McCormack had killed Shelton. She told the officer that McCormack had attacked Shelton and then forced her by knifepoint into the woods where he made her lie on the ground. She reported that McCormack had eventually

---

[1] *Bethel v. State*, 232 Ga. App. 82, 83 (1) (500 SE2d 595) (1998).
[2] *Jaber v. State*, 243 Ga. App. 562, 563 (533 SE2d 767) (2000).
[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

released her when she convinced him that she would help him.

McCormack denied knowing anything about the stabbing. He testified that Rose came to his trailer and asked him to take a walk with her. He stated that Rose had said that she and Shelton had fought and that Shelton had pulled a knife on her, but she had gotten the knife away from him. McCormack observed a knife in Rose's hand and testified that during their walk she stuck the knife into the ground several times. He said that Rose later asked him to carry the knife because she did not have any pockets and also instructed him to get rid of it when they were walking back to the house she shared with Shelton. Subsequently, the knife was recovered from a roadside gravel bed approximately 200 yards from the residence. McCormack and Rose were detained and taken to the sheriff's department for further questioning. Later, Rose was arrested and charged.

Rose contends that the circumstantial evidence relied upon to convict her was insufficient. She argues that there was "equally damning" circumstantial evidence against McCormack.

"[I]t is not necessary for circumstantial evidence to exclude every *conceivable* hypothesis of a defendant's innocence in order to authorize a conviction; only *reasonable* hypotheses must be excluded."[4] Further, questions regarding the reasonableness of hypotheses about the commission of a crime are for the jury to decide, and when the jury has found that the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt, we will not disturb the jury's finding.[5] Resolution of conflicts in the testimony of the witnesses, including state's witnesses, was for the jury.[6]

Evidence presented at trial revealed that there was blood on the t-shirt Rose was wearing, but no blood was found on McCormack's clothing. The police also noted that while Rose said that McCormack forced her to lie on the ground, there was little mud on Rose's clothes and her clothes were dry, although it was very wet and muddy that night. Further, although Shelton testified that he did not believe Rose was capable of the act she was charged with, he admitted that she had stabbed him on at least two other occasions.

In light of this evidence and based on our review of the entire record, we find ample evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Rose was guilty of the offenses with which she was charged.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[4] *Barela v. State*, 271 Ga. 169, 171-172 (517 SE2d 321) (1999).

[5] *Davis v. State*, 244 Ga. App. 670, 671 (536 SE2d 563) (2000).

[6] See, e.g., *Peek v. State*, 247 Ga. App. 364, 365 (1) (542 SE2d 517) (2000).

DECIDED APRIL 19, 2002.

*Albert L. Watson III*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Mary M. Simms, Assistant District Attorney*, for appellee.

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).