S02A1053. MARSHALL v. THE STATE.
(571 SE2d 761)

SEARS, Presiding Justice.

Appellant Quincey Marshall was convicted of murder and related crimes,[1] resulting in a life sentence. He appeals, alleging numerous trial court errors. Having reviewed the record, we find that the trial court abused its discretion by excluding relevant testimony concerning a witness's incarceration at the time of trial. Because the excluded testimony was cumulative of other admitted evidence, how-

---

[1] The crimes occurred on September 30, 1999, and appellant was indicted on August 2, 2000. Trial was held February 5-8, 2001, and appellant was convicted of felony murder, aggravated assault and illegal firearm possession. Appellant was sentenced to life in prison for felony murder (with the underlying aggravated assault conviction merging by operation of law) and also sentenced to five consecutive years for illegal firearm possession. Appellant's new trial motion was filed on February 23, 2001, amended on November 16, 2001, and denied on February 20, 2002. The trial transcript was certified on March 17, 2001. A timely notice of appeal was filed on February 27, 2002, the appeal was docketed on March 29, 2002, and submitted for decision without oral argument on May 20, 2002.

ever, the trial court's error was harmless. The trial court also erred by charging the jury that it could presume intent to kill from the use of a deadly weapon. Because appellant was convicted of felony murder and not malice murder, however, the State was not required to establish an intention to kill, and therefore the improper charge was harmless error. Finding appellant's other allegations of error to be without merit, we affirm.

The evidence of record shows that appellant was shot and injured, and his friend killed, during a drive-by shooting. Appellant suspected Keo Morris of involvement in the shooting and drove to Morris's neighborhood with an accomplice. A witness observed appellant approach Morris and ask about drugs. Morris went into his house, apparently to retrieve drugs, then exited the house and entered the back seat of appellant's car. Appellant rode in the front passenger seat, and his accomplice drove. After the car traveled up the street and paused, witnesses heard a gunshot and observed appellant push Morris out of the car. Two more shots were fired from the front passenger window (where appellant sat), killing Morris as he lay beside the roadway. The car then sped away. Approximately two hours after the shooting, police knocked on the doors and windows of appellant's home and received no answer. Two hours later, a second attempt to find appellant at his home also was unsuccessful. At trial, appellant presented an alibi defense, claiming that he was at his home at the time of the shooting.

1. The evidence at trial, construed most favorably to the jury's verdicts, was sufficient to enable rational triers of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.[2] Appellant's claim that certain eyewitness testimony was not reliable is unavailing, as witness credibility is an issue for the jury to determine.[3]

2. The trial court erred by charging the jury that it could presume intent to kill from the use of a deadly weapon.[4] However, appellant was convicted of felony murder, which, unlike malice murder, does not require the State to show an intention to kill, but only an intention to commit the underlying felony.[5] Accordingly, any error associated with the giving of the improper charge was harmless.[6]

3. The trial court did not err in charging the jury with regard to its consideration of appellant's custodial statement. The trial court

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 24-9-80; *Jenkins v. State*, 269 Ga. 282, 286 (498 SE2d 502) (1998).

[4] See *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001).

[5] *Holliman v. State*, 257 Ga. 209 (356 SE2d 886) (1987).

[6] *Dolensek v. State*, 274 Ga. 678 (558 SE2d 713) (2001); see *Oliver v. State*, 274 Ga. 539 (554 SE2d 474) (2001).

charged the jury that it should "consider with great care and caution the evidence of any statement made by the [appellant]."[7] Appellant's attempt to characterize this charge as relating to his in-court testimony rather than to his custodial statement is meritless. The charge never referenced appellant's testimony, and it immediately followed the court's explanation of how the jury was to determine whether appellant's custodial statement was voluntary. Viewing the charge in context, it obviously referred to the jury's consideration of appellant's custodial statement rather than his testimony.

4. The evidence of record supports the trial court's jury charge on parties to a crime. Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime.[8] In this matter, the evidence shows that appellant and his accomplice traveled to the victim's neighborhood; that appellant helped lure the victim into a car; that appellant rode in the passenger seat of the car in which the victim was shot; that appellant shoved the victim out of the car; that the victim was shot and killed by a gun fired from the area within the car where appellant sat; and that appellant and his accomplice then fled the scene.

5. At trial, a State's witness, the victim's cousin Harris, testified on direct examination that he was initially reluctant to come forward with his knowledge of the crime because he feared retaliation from appellant and his cohorts. Harris also testified on direct examination that when he was jailed on unrelated charges after the victim's murder, he was mistakenly put in a dormitory with appellant, and appellant tried to assault him. On cross-examination, appellant's counsel asked whether, when he eventually did come forward with information about his cousin's murder, Harris was still afraid. Harris responded that because he was in jail at that time, he was less concerned about being harmed by appellant. Counsel then asked if Harris was still in jail at the time of testifying, and he responded affirmatively. The State objected to this last question and its response on relevancy grounds. The trial court sustained the objection, and the question and response were stricken from the record.

We believe that the trial court abused its discretion by striking this testimony as irrelevant. Evidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case.[9] Here, the stricken testimony was relevant in two respects. First, the stricken testimony was relevant to show witness Harris's

---

[7] See OCGA § 24-3-53 ("All admissions shall be scanned with care, and confessions of guilt shall be received with great caution.").

[8] *Parks v. State*, 272 Ga. 353 (529 SE2d 127) (2000).

[9] *McGee v. State*, 267 Ga. 560, 565 (480 SE2d 577) (1997).

feelings toward appellant.[10] On direct examination, Harris stated that he initially did not come forward with his knowledge of the crime because he feared appellant, but explained that his fear was mitigated while he was incarcerated before trial. Harris also testified that after the victim's murder, appellant tried to assault him when the two were placed together in jail. It was a relevant inquiry on cross-examination, then, whether Harris was still incarcerated, and, hence, still fearful of appellant at the time of appellant's trial. This line of questioning would have further illuminated Harris's feelings toward appellant, which "may always be proved for the consideration of the jury."[11]

Moreover, this line of questioning was relevant because it logically may have shed light upon whether Harris, an incarcerated witness, received favorable treatment from the State in exchange for his testimony. This, too, is a relevant consideration for the jury in a criminal prosecution.[12]

Accordingly, the trial court abused its discretion by striking as irrelevant appellant's questioning about whether Harris was incarcerated at the time of trial. We conclude, however, that this discretionary abuse does not require reversal. While appellant should have been allowed this area of inquiry, the transcript shows that Harris's feelings regarding appellant were clearly established in testimony that preceded the stricken question and its response. The transcript also shows that the issue of whether Harris received favorable treatment from the State in exchange for his testimony was well explored in testimony that both preceded and followed the stricken question and response. Thus, the improperly stricken evidence was cumulative of other testimony that was admitted at trial, and its exclusion from evidence was therefore harmless.[13]

6. A State's witness testified that after appellant was attacked in the drive-by shooting, the home of the victim's aunt was shot at with guns. On appeal, appellant claims that the trial court erred by admitting this testimony as evidence of a prior similar transaction. However, appellant failed to raise this objection at trial and it is therefore waived on appeal.[14]

7. At trial, appellant testified on direct examination that he had never "owned a gun." On cross-examination, the State was allowed

---

[10] See OCGA § 24-9-68.

[11] Id.

[12] See *Hamilton v. State*, 255 Ga. 468, 471 (339 SE2d 707) (1986).

[13] *Hixson v. State*, 239 Ga. 134, 135 (236 SE2d 78) (1977).

[14] *Gordon v. State*, 273 Ga. 373, 379 (541 SE2d 376) (2001). Furthermore, it appears this evidence was admissible as it pertained to the State's theory of motive for the victim's murder — retaliation for the drive-by shooting. See *Johnson v. State*, 260 Ga. 457 (396 SE2d 888) (1990).

over objection to impeach this testimony with a certified copy of appellant's prior conviction for theft by receiving stolen property — specifically, a gun. Before allowing this evidence, the trial court considered the fact that appellant's prior conviction stemmed from an incident in which he had attempted to sell a stolen gun to an undercover DEA agent. The trial court reasoned that in so doing, appellant had willfully withheld and retained a stolen handgun with the intention of making others believe that he owned the gun and therefore could sell it. In light of these particular facts, the trial court admitted appellant's prior conviction to rebut his claim that he had never "owned a gun."

On appeal, appellant argues that because the receipt or possession of stolen property does not show ownership of that property,[15] evidence that he possessed a stolen gun should not have been allowed to rebut his testimony that he had never "owned a gun." On its face, appellant's argument is not without merit, as there is a distinction between ownership and mere possession. Our review of appellant's direct testimony, however, convinces us that the prior conviction was properly allowed as rebuttal evidence. In his testimony, appellant sought to explain that even though police discovered a bulletproof "flak jacket," two bullets and an empty shell casing in his bedroom, he was not personally involved with guns. In short succession, appellant testified that he had been given the flak jacket after being shot at in an earlier incident, that he was merely holding the bullets for a friend, and that he had never personally "owned a gun," although he had fired a gun previously. Viewed in this context, it becomes clear that appellant's direct testimony was not intended to relate exclusively to an actual ownership interest in guns. To the contrary, appellant's testimony was obviously meant to imply that his only previous contact with guns had been merely incidental, and that he had not previously possessed or had substantial contact with guns. Given this clear import of appellant's testimony, we conclude that appellant's prior conviction for possessing and attempting to sell a stolen gun was properly admitted for impeachment purposes.[16]

8. At trial, appellant failed to object to the court's granting of the jury's request to review a tape entered into evidence and the court's refusal to replay the trial testimony of a key witness for the jury. Accordingly, these enumerations are waived on appeal.[17]

---

[15] See OCGA § 16-8-7 (a).

[16] See *Francis v. State*, 266 Ga. 69, 71 (463 SE2d 859) (1995) (defendant implied that he had only one prior weapons offense conviction and testified that he had never owned a gun; trial court did not err in permitting the State to introduce a second weapons offense conviction as impeachment evidence).

[17] *Miller v. State*, 267 Ga. 92 (475 SE2d 610) (1996).

9. Appellant contends that the trial court improperly failed to honor the jury's request to cease deliberations for the night. However, the transcript shows that the jury foreman told the court that further deliberations would not be futile, and then requested that the jurors be allowed to return to the jury room to discuss whether to continue deliberations. The trial court agreed, and shortly thereafter, the jurors sent word out that they had decided to continue deliberating into the evening hours. Accordingly, the record fails to support appellant's contention.

10. In his final enumeration, appellant argues that he received ineffective assistance from trial counsel. In order to establish this claim, appellant must demonstrate both that counsel was deficient and that the outcome of appellant's trial would have been different but for such deficiency.[18] A failure to make either of these showings is fatal to an ineffectiveness claim.[19]

Appellant's counsel was not ineffective for questioning appellant about whether he had previously "owned a gun," thereby opening the door to the introduction of appellant's prior conviction. As explained in Division 7, supra, it was not unreasonable for counsel to believe that the distinction between prior possession and prior ownership of a gun would prevent appellant's prior conviction from coming into evidence. Counsel artfully worded his questioning to avoid asking whether appellant had previously possessed a gun, and only after much consideration did the trial court conclude that under the particular circumstances presented in this case, the door had been opened for the State to introduce evidence of appellant's prior conviction for receipt of a stolen gun.[20] Accordingly, we believe that counsel's actions in this regard were the result of sound trial strategy.[21] Whether, in hindsight, this tactical decision appears to have been wise or unwise is not determinative of whether it constituted the ineffective assistance of trial counsel.[22]

Nor did counsel err by failing to object to limited questioning by the State that touched upon possible gang activity. The State's theory in this case was that the victim was killed in retaliation for involvement in a drive-by shooting — something that frequently signals

---

[18] *Strickland v. Washington*, 466 U. S. 668, 687-688 (104 SC 2052, 80 LE2d 674) (1984).

[19] Id.

[20] See Division 7, supra.

[21] See *Stephens v. State*, 265 Ga. 120, 122 (453 SE2d 443) (1995). We have already held that the introduction of appellant's prior conviction was not error. See Division 7, supra. Hence, counsel's failure to object thereto could not have been harmful.

[22] *Luallen v. State*, 266 Ga. 174, 177 (465 SE2d 672) (1996). See *Austin v. Carter*, 248 Ga. 775, 780 (285 SE2d 542) (1982). Also falling within the realm of trial strategy was counsel's decision to introduce appellant's custodial statement, in which he strongly denied involvement in the crime and asserted his alibi defense for the first time. *Stephens*, 265 Ga. at 122.

gang activity. The State may present evidence of a defendant's motive for allegedly committing a crime.[23] If that motive directly involves appellant's membership in "an unsavory group,"[24] the relevant evidence does not become immaterial because it incidentally places appellant's character or reputation in evidence.[25]

Finally, trial counsel did not err by failing to object to the State's questioning of witness Harris concerning his claim that he was attacked by appellant when the two were inadvertently placed together while in jail. Contrary to appellant's contention, this was not evidence of a similar transaction, but rather was admissible testimony concerning threatening conduct toward a witness.[26]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 28, 2002 —
RECONSIDERATION DENIED NOVEMBER 22, 2002.

*Thomas J. Gustinella,* for appellant.

*Spencer Lawton, Jr., District Attorney, Benjamin B. Reed, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General,* for appellee.

---

[23] *Clark v. State*, 271 Ga. 6, 9 (515 SE2d 155) (1999).

[24] Id.

[25] Id.

[26] See *Fugitt v. State*, 256 Ga. 292, 294 (348 SE2d 451) (1986). In this same regard, counsel was not ineffective for failing to object to permissible questioning concerning appellant's involvement with guns and permissible questioning about whether alibi witnesses had come forward at the preliminary hearing in this matter.