## A03A0396. DE'MON v. THE STATE.
### (584 SE2d 639)

RUFFIN, Presiding Judge.

A jury found Ryan Frank De'Mon guilty of two counts of aggravated assault with intent to rape two women. On appeal, De'Mon challenges the sufficiency of the evidence supporting one of his aggravated assault convictions and several evidentiary rulings. He also asserts the trial court improperly instructed the jury regarding similar transaction evidence. De'Mon further contends the trial court should have granted his request to charge the jury on the lesser crimes of sexual battery and attempted rape. Finally, De'Mon alleges his trial counsel was ineffective. For reasons that follow, we affirm.

1. In reviewing a defendant's challenge to the sufficiency of the evidence, we construe the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] Moreover, we do not weigh the evidence or assess witness credibility, but determine whether a rational trier of fact could have found all the elements of the crime beyond a reasonable doubt.[2]

Applying this standard, the evidence shows that the first victim, J. T., worked as a real estate agent at a Cobb County subdivision that was under construction. On June 10, 1999, J. T. was alone in the model home when De'Mon entered and said that he was meeting his mother there. He then asked to see the model home. J. T. allowed De'Mon to tour the house, but did not accompany him.

As De'Mon walked through the house, he began shouting questions from the other rooms regarding the home's standard options. Fearing she was being rude, J. T. went into the hallway to assist De'Mon. De'Mon then asked her if she had a boyfriend, and J. T. replied she had a husband, at which point, De'Mon commented she was not wearing a ring. J. T. became alarmed by De'Mon's behavior.

---

[1] See *Cox v. State*, 242 Ga. App. 334-335 (1) (528 SE2d 871) (2000).
[2] See id. at 335.

When he began walking toward her, J. T. tried to get to a phone, but De'Mon grabbed her from behind. While she struggled, De'Mon pinned her arms to her sides and touched the underside of her breasts.

J. T. escaped from De'Mon's grasp and ran to her desk. As she screamed, De'Mon tried to calm her down, saying: "[m]y bad, my bad, my bad." De'Mon said he was going to look at the other homes in the subdivision and left, taking a master key with him. As the victim called the police, she saw De'Mon leave the subdivision.

Two weeks later, on June 24, 1999, De'Mon returned to the model home and asked J. T. if she remembered him. The victim replied: "Yes I do. You are the one that grabbed me." The phone rang, and J. T. answered it. De'Mon said he was going to wait outside for his mother. Scared, J. T. called the police.

As J. T. was on the phone with the police, the security system alerted her that a door or a window on the bottom floor, which should have been locked, had been opened. J. T. testified at trial that she feared De'Mon would rape her. She told the police over the phone that De'Mon "[was] in the house now." J. T. ran outside to be near construction workers who were framing a house. Shortly thereafter, the police arrived. The investigating officer subsequently discovered that the back door had been unlocked and left open.

Within 15 minutes of receiving J. T.'s call, the police learned of another incident that occurred in a neighboring Cobb County subdivision that was under construction. The second victim, C. S., worked as a real estate agent in that neighborhood and was alone in the model home. De'Mon arrived at C. S.'s workplace, posed as an interested buyer, and introduced himself as "Craig." C. S. showed De'Mon the model home, but avoided the upstairs and the basement as a safety precaution.

While touring the basement alone, De'Mon asked C. S. to come downstairs and open the door to an office. C. S. refused, telling De'Mon that she did not have the key. De'Mon then went upstairs and began asking C. S. about the master bedroom. When C. S. went upstairs to answer his questions, De'Mon grabbed her buttocks and neck, forcing her to the floor. De'Mon began hitting C. S.'s head against the bottom of a nightstand, causing a hairline fracture. Each time C. S. screamed, De'Mon choked her. C. S. testified that De'Mon tore her clothes, put his mouth on her breast, and said: "[y]ou're going to want this."

De'Mon unsuccessfully tried to pull down C. S.'s panty hose. De'Mon then shoved his hands down C. S.'s underwear and inserted his finger into her vagina. C. S. testified that De'Mon fled after a truck arrived in the subdivision and she screamed for help. Based on

this and other evidence, the jury found De'Mon guilty of aggravated assault with intent to rape both J. T. and C. S.

On appeal, De'Mon argues that insufficient evidence supported his conviction for assaulting J. T. with intent to rape. According to De'Mon, the State presented no direct evidence that he intended to rape J. T., and a reasonable hypothesis exists that he had no such intent. We disagree.

"It is not necessary for circumstantial evidence to exclude every conceivable hypothesis of a defendant's innocence in order to authorize a conviction; only reasonable hypotheses must be excluded."[3] Whether a hypothesis is reasonable is a matter for the jury.[4] The evidence shows that De'Mon grabbed J. T., touching the underside of her breasts, and that J. T. feared she was going to be raped. Although he left the model home on that occasion, he returned a few weeks later and again approached J. T. When J. T. grew fearful and called the police, De'Mon fled to another subdivision where he sexually assaulted a second real estate agent. Under these circumstances, the jury could reasonably conclude that De'Mon intended to rape J. T. and turned to his second victim only after being foiled in his first attempt.

"The crime of aggravated assault with intent to rape is complete when there is a substantial step toward a battery of the victim, i.e., an assault, coupled with [an] intent to rape."[5] As discussed, the jury was authorized to conclude that De'Mon intended to rape J. T.[6] It follows that the evidence was sufficient, and this claim of error presents no basis for reversal.

2. De'Mon argues that the trial court erred in admitting the testimony of two similar transaction witnesses. Over De'Mon's objection, the court admitted the testimony of Cynthia Parker and Pam Webb, two stay-at-home mothers who encountered De'Mon, a stranger, in their respective garages in April and May 1998. According to De'Mon, the State failed to show a sufficient probative connection between the prior incidents and the crimes charged. He also claims the admission of this evidence impermissibly placed his character in issue. These contentions are without merit.

Evidence of similar transactions may be admitted by a trial court where "there is a sufficient connection or similarity between the

---

[3] (Punctuation and emphasis omitted.) *Rose v. State*, 255 Ga. App. 135, 137 (564 SE2d 548) (2002).

[4] See id.

[5] (Punctuation omitted.) *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990).

[6] See id.

offense and the crime charged, so that proof of the former tends to prove the latter."[7] Here, the State presented evidence that in April 1998, Parker discovered De'Mon in her garage, peering into her van. When Parker confronted De'Mon, he introduced himself as "Callahan" and said he was looking for his parents' house. Although Parker allowed De'Mon to look through her neighborhood directory, she would not let him into her house. De'Mon remained in Parker's garage until she repeatedly told him that she needed to leave. After De'Mon left, Parker saw him drive back into the neighborhood. Parker testified that, based on De'Mon's actions, her "internal alarm went off that this just does not add up." Approximately one month later, De'Mon returned to Parker's house and asked her four-year-old if he could come inside. The child notified Parker, who met De'Mon at the door. De'Mon said he was starting a lawn care business and asked if he could come inside to look at the neighborhood directory. Parker refused and called the police.

Similarly, in May 1998, Webb found De'Mon in her garage. This time, De'Mon said that he thought his friend, Adam, lived there. De'Mon left, but returned approximately one hour later, telling Webb that he was still looking for Adam. Webb asked for Adam's last name, which De'Mon did not know. De'Mon then asked Webb if she had a neighborhood directory so he could look up Adam's address. According to Webb, De'Mon became forceful and insisted that she go inside and get the directory, which aroused Webb's suspicion. Thus, when De'Mon drove away, she followed him in her car to obtain his license plate number.

We will uphold a trial court's finding of similarity unless it is clearly erroneous.[8] Moreover, Georgia courts construe the rules regarding the use of similar transaction evidence liberally in cases involving sexual offenses.[9] Applying this standard here, we find no error in the trial court's admission of this evidence. In his encounters with J. T., C. S., Parker, and Webb, De'Mon demonstrated a pattern of targeting women in secluded areas, while generally no other adults were around. On each occasion, De'Mon purported to have some legitimate reason for being on the premises. De'Mon also portrayed himself as a person in need of assistance, whether to purchase a home, locate his parents, find a friend, or to get a small business started. Thus, we find that the State established a sufficient connection between the similar transaction offenses and the crimes charged

---

[7] *Shiver v. State*, 276 Ga. 624, 625-626 (3) (581 SE2d 254) (2003).

[8] See *Colbert v. State*, 275 Ga. 525, 526 (2) (570 SE2d 321) (2002).

[9] See *Culver v. State*, 230 Ga. App. 224, 229 (3) (496 SE2d 292) (1998).

to show a course of conduct and bent of mind.[10] Accordingly, this claim of error provides no basis for reversal.[11]

3. De'Mon alleges that the trial court improperly instructed the jury on similar transaction evidence. The State moved to admit this evidence to show De'Mon's bent of mind and course of conduct. The trial court granted the request and admitted the evidence for those purposes. However, when the evidence was admitted, the trial court informed the jurors that the evidence could be considered only to show motive, intent, course of conduct, and bent of mind. According to De'Mon, the trial court's adding of the words "motive" and "intent" created an impermissible laundry list which offends our holding in *Stephan v. State*.[12] Again, we find no error.

Georgia law provides that "[w]hen evidence admitted for one purpose is potentially unfairly prejudicial to a party, that party is entitled to have the court instruct the jury to limit its consideration to the *one purpose* for which the evidence is admissible."[13] For example, if similar transaction evidence is only offered to establish identity, modus operandi, or bad faith, then a jury should be instructed accordingly. The State argues that the trial court did not err in instructing the jury because motive and intent are subsumed in "bent of mind." We agree that these are similar concepts. Indeed, based on the evidence presented at trial, motive and intent were permissible bases for using the similar transaction evidence.[14] Accordingly, we find no reversible error in the trial court's addition of these two bases in its instruction to the jury.[15] Moreover, if De'Mon wanted to limit the jury's consideration of this evidence, it was incumbent upon him to request a limiting instruction. Having failed to do so, he cannot now claim that the trial court erred by failing to give same.[16]

4. De'Mon argues that the trial court erred in admitting a certified copy of his conviction for prowling that included his sentence for the crime. He cites *Groble v. State*[17] for the proposition that such information on "the sentence in a prior offense does not show motive, intent, scheme, and bent of mind."[18] Thus, De'Mon maintains the evidence should have been excluded.

As this Court noted in *Groble*, to prevail on this claim of error, a

---

[10] See id.

[11] See *Lumsden v. State*, 222 Ga. App. 635, 636 (1) (475 SE2d 681) (1996).

[12] 205 Ga. App. 241 (422 SE2d 25) (1992).

[13] (Punctuation omitted.) Id. at 243-244 (2).

[14] See *McClain v. State*, 220 Ga. App. 474, 476-477 (5) (469 SE2d 756) (1996).

[15] See id.

[16] See *State v. Belt*, 269 Ga. 763, 764 (505 SE2d 1) (1998).

[17] 192 Ga. App. 260 (384 SE2d 281) (1989).

[18] Id. at 260 (2).

defendant must show harm as well as error.[19] Harm is still the legal center of gravity. In order for there to be reversal, harm must be shown. Assuming that the trial court should have redacted the certified copy of De'Mon's conviction to remove the sentencing information, it does not necessarily follow that De'Mon was harmed by the introduction of the evidence. Given the unequivocal testimony of the victims in this case linking De'Mon to the crimes for which he was charged, we find it highly improbable that the inclusion of the sentence contributed to the verdict.[20]

5. The State presented a third similar transaction witness, Nancy Plachta, who testified that De'Mon had made unwelcome sexual advances toward her. Plachta, who had known De'Mon since he was in elementary school, declined to press charges. During the sentencing phase, the prosecutor referenced De'Mon's treatment of Plachta, describing it as "horrifying." De'Mon contends that the State should not have been able to use this incident — "for which there was never a warrant, an arrest, or a conviction" — in aggravation at sentencing. We find this contention equally unavailing.

During sentencing, a court may consider any evidence properly adduced during the guilt-innocence phase of the proceedings.[21] And, "[e]vidence in aggravation may include reliable information tending to show a defendant's general bad character."[22] Evidence of the similar transaction was properly admitted, and we find no error. Moreover, trial counsel failed to object to the State's argument, thus waiving any alleged error.[23]

6. De'Mon contends that the trial court erred in failing to charge the jury on the lesser offenses of sexual battery with respect to C. S., and attempted rape as to both victims. Again, we disagree.

"[T]he trial court is obligated to give a properly requested instruction on lesser included offenses only if the evidence warrants such an instruction."[24] The State presented evidence showing the completed crimes of aggravated assault with intent to rape J. T. and C. S. Furthermore, at trial, De'Mon testified and denied that any crime occurred. He asserted that he did not attack or touch J. T., whom he had never seen before trial. He also testified that, although

---

[19] See id.

[20] See id.

[21] See *Davis v. State*, 235 Ga. App. 362, 364 (4) (509 SE2d 655) (1998). See also *McClain v. State*, supra (sentencing court may consider in aggravation evidence of similar transactions properly admitted at trial).

[22] *Cook v. State*, 270 Ga. 820, 831 (15) (514 SE2d 657) (1999) (not error to allow a witness to testify at sentencing that defendant previously exposed himself to her).

[23] See *Cummings v. State*, 261 Ga. App. 281, 283 (5) (582 SE2d 231) (2003).

[24] (Punctuation omitted.) *Franklin v. State*, 249 Ga. App. 834, 837 (3) (549 SE2d 794) (2001).

he had previously met C. S., he never attacked her. The evidence thus offered the jury a choice between the completed crimes or no crimes. Under these circumstances, the trial court did not err in refusing to charge the jury on the lesser offenses.[25]

We further note that the trial court charged the jury on sexual battery with respect to J. T. And, although De'Mon's attorney requested a sexual battery charge as to both victims, he stated that he had no objection to the giving of the instruction solely in regard to J. T. Having acquiesced in the trial court's decision to give the instruction as to only one victim, De'Mon is precluded from raising the issue on appeal.[26] Moreover, De'Mon did not submit a written request to charge on attempted rape. "The failure of the trial court to give the jury instruction appellant contends was necessary cannot be reversible error in the absence of a written request to so charge."[27]

7. Finally, De'Mon alleges that his trial counsel's failure to object to the introduction of the similar transaction evidence in aggravation at sentencing, as well as his failure to request the jury instructions discussed in Divisions 3 and 6, amounts to ineffectiveness. In order to prevail on this claim, De'Mon must prove that: (1) his trial counsel was deficient; and (2) the outcome of his trial would have differed but for trial counsel's deficiency.[28] "A failure to make either of these showings is fatal to an ineffectiveness claim."[29]

We have held already that the introduction of the similar transaction evidence was not error. The trial court also did not err in instructing the jury on similar transactions or refusing to charge on the lesser offenses of sexual battery and attempted rape. It follows that trial counsel's performance was not deficient.[30] Finding no errors warranting reversal, we hereby affirm the verdict and judgment.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

---

[25] See id. (although defendant denied touching the victim, the State presented evidence showing the completed crimes of burglary, aggravated assault with intent to rape, and aggravated sexual battery; thus, jury was presented with a choice between the completed crimes or no crime at all, and the trial court did not err in failing to charge on attempted rape); *Williams v. State*, 248 Ga. App. 316, 320 (4) (546 SE2d 74) (2001) (given defendant's justification defense, evidence established either the completed crime or no crime at all, and the trial court did not err in failing to charge on lesser offenses).

[26] See *Beasley v. State*, 254 Ga. App. 839, 841 (2) (563 SE2d 909) (2002) ("A defendant cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal.").

[27] *Heard v. State*, 274 Ga. 196, 200 (7) (552 SE2d 818) (2001).

[28] See *Marshall v. State*, 275 Ga. 740, 745 (10) (571 SE2d 761) (2002).

[29] Id.

[30] See *Johnson v. State*, 275 Ga. 650, 653-654 (8) (571 SE2d 782) (2002) (trial counsel's failure to object to jury charges not deficient performance where charge was correct).

DECIDED JUNE 26, 2003.

*Lee W. Fitzpatrick*, for appellant.
*Patrick H. Head, District Attorney, Ann B. Harris, Amy H. McChesney, Assistant District Attorneys*, for appellee.