### A10A0995. GRESHAM v. THE STATE.
(695 SE2d 73)

BLACKBURN, Presiding Judge.

Following a jury trial, Edward Frank Gresham was convicted on one count of child molestation[1] and one count of statutory rape.[2] He appeals, arguing that the trial court erred in failing to declare a mistrial based on juror misconduct, admitting similar transaction evidence, failing to instruct the jury on bare suspicion, and imposing a disproportionately severe sentence. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*,[3] the evidence shows that in 2006, Gresham was the live-in boyfriend of Christen Wood. B. B. was Wood's 14-year-old female cousin. On May 20, 2006, some time after midnight, Wood, who suffered from endometriosis, was not feeling well. Because her boyfriend Gresham was out with friends, Wood called B. B.'s mother to ask her if she would accompany her to the hospital. B. B.'s mother declined but allowed B. B. to go with Wood instead. A few minutes later, Wood picked up B. B., and the two of them drove to Athens Regional Medical Center's emergency room. Shortly after Wood was called

---

[1] OCGA § 16-6-4 (a).
[2] OCGA § 16-6-3 (a).
[3] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

from the waiting room to meet with the doctor, B. B., who was holding Wood's cell phone, answered a call from Gresham and told him that they were at the hospital. Gresham responded that he would leave immediately to meet them. Less than an hour later, B. B. received another call from Gresham, who said that he had just arrived at the hospital and asked B. B. to meet him outside on the driveway to the entrance of the emergency room.

Subsequently, B. B. walked outside, found Gresham, and the two of them drove to the hospital's parking deck. Once there, Gresham told B. B. that he was too drunk to park his vehicle and asked her if she would do so. B. B. agreed, and after driving up and down the multi-leveled parking deck for a few minutes, she parked Gresham's vehicle between two other cars. Just as B. B. began to exit the vehicle, Gresham, who had pulled his pants down, grabbed B. B. by the waist, pulled her onto his lap, and pulled down the shorts she was wearing. After moving B. B. up and down on his lap for a few moments, Gresham pushed her face down across the vehicle's center console, put his fingers in her privates, and placed his privates inside her privates. When Gresham finished, B. B. put her shorts back on and ran back into the hospital. She did not tell Wood or anyone at the hospital what had happened and drove home with Wood after Wood had been treated. Two days later, however, B. B. told another relative and, ultimately, told her mother that Gresham had sexually molested her. That same day, B. B. and her mother met with police to report the incident, and B. B. met with a specially trained nurse, who examined her for evidence of sexual assault.

Gresham was indicted on one count each of child molestation, statutory rape, and aggravated child molestation. At trial, B. B. testified about the sexual assault, and her mother testified as to B. B.'s disclosure of the assault. Additionally, a former GBI forensic scientist testified that an analysis of the seminal fluid collected by the nurse during her examination of B. B. indicated that the DNA of the seminal fluid matched Gresham's DNA. The State also introduced similar transaction evidence in the form of Wood's younger sister, who testified that Gresham had made unwanted sexual advances toward her on three separate occasions after he appeared to have been drinking. At the conclusion of the trial, the jury found Gresham guilty on the charges of child molestation and statutory rape but found him not guilty on the charge of aggravated child molestation. Gresham filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Gresham contends that the trial court abused its discretion in denying his motion for a mistrial because an alternate juror made improper comments about his guilt. We disagree.

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, we have also recognized that some irregularities are inconsequential.

(Punctuation omitted.) *Tolbert v. State*.[4] "We will not set aside a jury verdict based on such an irregularity . . . unless the conduct was so prejudicial that the verdict is inherently lacking in due process." (Punctuation omitted.) *Arnold v. State*.[5] Finally, "[t]he decision to grant a mistrial or remove a juror lies within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of that discretion." *Wilkins v. State*.[6]

In this matter, the record shows the following relevant facts. Immediately after the jury was chosen and sworn in, the court recessed to allow the jurors to eat lunch before opening statements. At that time, the bailiff informed the court that a member of the venire, who had not been chosen for the jury, had information about possible juror misconduct. After she was placed under oath, the venire member testified that on the previous day, during a break from voir dire proceedings, she heard a woman, who had now been chosen to serve as an alternate, say that the defendant should be hung and that if it were the woman's granddaughter who had been molested, she would beat the defendant with a two-by-four. The venire member further testified that the alternate loudly made such comments more than once, and that she believed that several other members of the venire heard her comments. Thereafter, the court placed the alternate juror under oath and asked her if she had made any comments about the defendant. Although she belligerently denied doing so, the court, the State, and Gresham's counsel agreed that she lacked credibility. Consequently, the court excused her from service.[7]

After the alternate was excused, Gresham moved for a mistrial, arguing that the alternate had potentially prejudiced the rest of the jury against him. Before ruling on Gresham's motion, the trial court questioned each juror individually, under oath, and outside the presence of the other jurors as to whether they had heard anyone

---

[4] *Tolbert v. State*, 300 Ga. App. 51, 53 (2) (684 SE2d 120) (2009).

[5] *Arnold v. State*, 243 Ga. App. 118, 123 (2) (532 SE2d 458) (2000).

[6] *Wilkins v. State*, 261 Ga. App. 856, 857 (1) (583 SE2d 905) (2003).

[7] Pursuant to OCGA § 15-12-172, a trial court may replace a juror who "at any time, whether before or after final submission of the case to the jury, . . . dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause."

commenting on the case. Six jurors testified that they had heard the alternate make improper comments about the defendant, but when questioned further by the court, each of those jurors stated that the comments would not affect his or her ability to fairly decide the case. In fact, one juror thought the alternate was crazy and another assumed she was joking. Based on this testimony, the court found that although the alternate engaged in improper conduct, the jurors who had heard her "thoroughly discounted" her statements, and thus it was not necessary to declare a mistrial.

Gresham argues that the alternate's comments prejudiced the other jurors and that granting a mistrial, rather than excusing the alternate, was the only adequate cure for the misconduct. However, the record discloses no basis upon which to conclude that the misconduct was so prejudicial as to deny Gresham due process. See *Arnold*, supra, 243 Ga. App. at 123 (2). Here, the trial judge thoroughly questioned each individual juror under oath about what he or she had heard, and whether he or she had the ability to remain fair and impartial, and found that each juror could remain impartial. Thus, Gresham's contention that the alternate's comments prejudiced the other jurors was unsupported. See *Tolbert*, supra, 300 Ga. App. at 55 (2). Accordingly, the trial court did not abuse its discretion by refusing to declare a mistrial. See id.; *Arnold*, supra, 243 Ga. App. at 123 (2).

2. Gresham contends that the trial court erred in admitting similar transaction testimony regarding his unwanted sexual advances toward Wood's younger sister. We disagree.

In order for similar transaction evidence

[t]o be admissible for the purposes of establishing motive, intent, course of conduct, or bent of mind, the State must show (a) sufficient evidence that the similar transaction occurred and (b) sufficient connection or similarity between the similar transaction and the crime alleged so proof of the former tends to prove the latter.

(Punctuation omitted.) *Evans v. State*.[8] Furthermore,

[w]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses because such evidence tends to establish that a defendant has such bent of mind as to

---

[8] *Evans v. State*, 300 Ga. App. 180, 182 (684 SE2d 311) (2009).

initiate or continue a sexual encounter without a person's consent.

(Punctuation omitted.) *Hilliard v. State*.[9] "The decision of a trial court to admit evidence of similar transactions will be upheld unless clearly erroneous." (Punctuation omitted.) *Evans*, supra, 300 Ga. App. at 182.

Prior to trial, the State filed the requisite notice of intent to introduce the similar transaction of Gresham's unwanted sexual advances toward Wood's younger sister. After a hearing, in which the testimony of Wood's younger sister was proffered and in which the State argued that the evidence was appropriate to show Gresham's bent of mind, the trial court ruled that the evidence was admissible. At trial, Wood's younger sister testified that Gresham had made unwanted sexual advances toward her on three separate occasions. She testified that the first incident occurred when she was either 16 or 17 years old and was sleeping over at Wood's and Gresham's home. After she had gone to bed, Gresham came into the spare bedroom where she was sleeping, pulled on the sweatpants she was wearing, and asked her to "let [him] eat it." He left after she threatened to tell Wood. The second incident occurred some months later when she was again at Wood's home. At that time, Gresham attempted to kiss her and put his tongue in her mouth but again stopped when she threatened to tell Wood. The third incident occurred a year or so later and again at Wood's home. Similar to the first incident, Gresham came into her room while she was sleeping and began tugging at her pants until she told him to leave. She further testified that on each occasion, Gresham smelled like he had been drinking.

Gresham argues that the trial court erred in admitting this evidence because the incidents were not similar to his alleged molestation of B. B. Specifically, he argues that, unlike B. B., Wood's sister was 16 years old or older at the time of the incidents and that none of the incidents with Wood's sister involved a sexual act. However, "[n]o Georgia case holds that the difference in age of the victims is alone determinative of similarity. Our precedent consistently holds that it is the totality of the similar facts surrounding the crimes which are properly considered in a similar transaction analysis." *Payne v. State*.[10] See, e.g., *Evans*, supra, 300 Ga. App. at 183; *Sands v. State*;[11] *Kingsley v. State*;[12] *Barrett v. State*.[13] Indeed,

[9] *Hilliard v. State*, 298 Ga. App. 473, 476 (3) (680 SE2d 541) (2009).

[10] *Payne v. State*, 285 Ga. 137, 139 (674 SE2d 298) (2009).

[11] *Sands v. State*, 291 Ga. App. 639, 641-642 (662 SE2d 374) (2008).

[12] *Kingsley v. State*, 268 Ga. App. 729, 730 (1) (603 SE2d 78) (2004).

[13] *Barrett v. State*, 253 Ga. App. 357, 358-359 (1) (559 SE2d 108) (2002).

"the difference in the victims' ages does not make the similar transaction inadmissible." *Kingsley*, supra, 268 Ga. App. at 730 (1).

Nevertheless, on appeal, Gresham cites *Bloodworth v. State*[14] and *Perry v. State*[15] for the proposition that because B. B.'s age was an element of the offenses for which he was charged, his inappropriate behavior toward Wood's sister, who was over the age of consent, was not sufficiently similar to his alleged crime here. Gresham's reliance on these decisions is misguided. In *Bloodworth*, the defendant was charged with molesting a six-year-old child, and the State presented similar transaction evidence that he made sexually-tinged remarks to a 22-year-old woman, patted her behind, and tickled her. Supra, 173 Ga. App. at 688-689 (1). Under those circumstances, we found that the trial court improperly admitted the evidence as a similar transaction because "[m]aking a 'pass' at an adult woman cannot be equated to molesting a six-year-old child, nor is it of sufficient similarity to necessarily show a lustful disposition on the part of appellant." Id. However, as noted above, "our decision in *Bloodworth* does not create a per se rule whereby evidence of a sexual offense involving an adult victim is always inadmissible in cases in which the sexual offense was perpetrated on a minor." (Punctuation omitted.) *Sands*, supra, 291 Ga. App. at 641.

*Perry* is also distinguishable. In that case, the defendant was charged with violently raping an adult woman at gunpoint. *Perry*, supra, 263 Ga. App. at 670 (2). The similar transaction evidence presented by the State was that the defendant had sexual intercourse with a 13-year-old girl but did not threaten her. Id. at 670-671 (2). We found that nonforcible sex with a minor could not be equated with the violent rape of an adult because the acts were too dissimilar. Id. at 671-672 (2). Focusing on the similarities here, the incidents with Wood's younger sister and B. B. involved Gresham making unwanted sexual advances toward younger relatives of his girlfriend after he had been drinking. Accordingly, the trial court's decision to admit this similar transaction evidence was not clearly erroneous. See *Sands*, supra, 291 Ga. App. at 640-642 (defendant's touching of 17-year-old's buttocks was sufficiently similar to offense of molesting a 12-year-old by touching her privates for which he was charged); *De'Mon v. State*[16] (similar transaction evidence showing manner by which defendant targeted women was admissible despite the fact that prior transactions did not involve actual attacks); *Smith v.*

---

[14] *Bloodworth v. State*, 173 Ga. App. 688 (327 SE2d 756) (1985).

[15] *Perry v. State*, 263 Ga. App. 670 (588 SE2d 838) (2003).

[16] *De'Mon v. State*, 262 Ga. App. 10, 13-14 (2) (584 SE2d 639) (2003).

*State*[17] (prior transaction evidence found sufficiently similar despite difference in victims' ages and despite fact that prior transaction did not involve sexual act).

3. Gresham contends that the trial court erred in refusing to instruct the jury on bare suspicion. We disagree.

"If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised by the evidence, denial of the charge request is proper." (Punctuation omitted.) *Johnson v. State*.[18] The charge on bare suspicion, which Gresham requested, stated: "Facts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant."[19] However, "the evidence, as set out above, raised more than a bare suspicion that [Gresham] was guilty of the crimes charged. A defendant is not entitled to a charge on bare suspicion where the evidence raises more than a mere suspicion of his guilt." *Dulcio v. State*.[20] Furthermore, "since the trial court gave complete instructions on reasonable doubt and the presumption of innocence, the charge as a whole adequately covered the principles of law embodied in the bare suspicion charge." *Duke v. State*.[21] Thus, the trial court did not err by refusing to instruct the jury on bare suspicion.

4. Finally, Gresham contends that the trial court erred by imposing a disproportionately severe sentence and by denying his motion to reconsider that sentence. This contention is without merit.

After the jury found Gresham guilty on the charges of child molestation and statutory rape, the trial court merged the two convictions and imposed a sentence of 20 years with 15 to serve in confinement for the statutory rape conviction. Gresham argued in his motion for new trial, and argues now on appeal, that from July 1, 2007 to June 30, 2008, the average sentence in the Western Judicial Circuit was 9.5 years for a child molestation conviction and 6.39 years for a statutory rape conviction, and thus that his sentence was too severe. Although Gresham does not explicitly state as much, we assume that his challenge is that his sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution.

However, Gresham concedes that his sentence is within the

---

[17] *Smith v. State*, 206 Ga. App. 557, 558 (1) (426 SE2d 23) (1992).

[18] *Johnson v. State*, 293 Ga. App. 32, 39 (6) (666 SE2d 452) (2008).

[19] Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.20.20 (4th Ed. 2007).

[20] *Dulcio v. State*, 297 Ga. App. 600, 602 (2) (677 SE2d 758) (2009).

[21] *Duke v. State*, 298 Ga. App. 719, 723 (4) (681 SE2d 174) (2009).

statutory limits set by OCGA §§ 16-6-3 (b) and 16-6-4 (b) (1). "It is well established that the trial court has the discretion to impose sentence within the parameters prescribed by the statute and if the sentence is within the statutory limits, the appellate courts will not review it." (Punctuation omitted.) *Bennett v. State*.[22] Furthermore,

> [a] presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.

(Punctuation omitted.) *Kollie v. State*.[23] Here, Gresham has not demonstrated that his sentence shocks the conscience. See id. Accordingly, the trial court did not err in imposing or in refusing to reconsider Gresham's sentence.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 13, 2010.

*Benjamin A. Pearlman, Jessica I. Benjamin*, for appellant.
*Kenneth W. Mauldin, District Attorney, Jon R. Forwood, Assistant District Attorney*, for appellee.

---

[22] *Bennett v. State*, 292 Ga. App. 382, 385 (1) (665 SE2d 365) (2008).

[23] *Kollie v. State*, 301 Ga. App. 534, 543-544 (10) (687 SE2d 869) (2009).