305 Ga. 874
FINAL COPY

S19A0440.  CARTER v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, Cameron Taboris Carter was found guilty of the malice murder of Ashley Garry and other offenses.[1] Carter claims on appeal that he received ineffective assistance of trial counsel.  We affirm for the reasons set forth below.

---

[1] Garry was killed late in the evening of September 6, or the early morning of September 7, 2014. On February 16, 2015, a Crisp County grand jury indicted Carter for malice murder, felony murder, aggravated assault, home invasion, burglary, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The count of possession of a firearm by a convicted felon was nolle prossed. Following a November 16-19, 2015 trial, the jury found Carter not guilty of burglary but guilty of the remaining counts. The trial court sentenced Carter on November 19, 2015, to consecutive sentences of life imprisonment for malice murder, life imprisonment for home invasion, and five years' imprisonment for possession of a firearm during the commission of a felony. The felony murder count was vacated by operation of law, although the sentencing order stated that it merged into the malice murder count. The count of aggravated assault merged into the count of malice murder. Carter filed a motion for new trial on November 24, 2015, which he amended on June 21, 2017. Following a January 31, 2018 hearing, the trial court denied the motion on February 9, 2018. The trial court granted Carter's motion for out-of-time appeal on August 27, 2018. Carter then filed a notice of appeal within the time allowed, and this case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

Viewed in a light most favorable to the jury's verdict, the evidence shows the following. Garry was last seen alive sometime after 9:30 p.m. on September 6, 2014, by her young son, when the boy's grandparents picked him up from Garry's residence off of 10th Street in Cordele for an overnight visit. The next day, a co-worker was concerned that Garry had not reported to work that morning and was not responding to phone calls. After the co-worker's shift, she went to Garry's residence around 4:00 p.m., where she knocked and called out Garry's name with no response. After walking around to the other side of the home, she saw a door with a damaged frame and a bent deadbolt sticking out. She called 911.

Responding officers found Garry inside, dead. She was slumped face down in the doorway to her bedroom, with her legs tucked under her body, still clothed in her work uniform and with her car keys in her hand. An autopsy showed that Garry was shot in the center of the top of her head. The bullet traveled straight down and lodged in the brain stem, causing immediate death. The path of the bullet and the position of the body were consistent with Garry having been shot

by someone standing over her while she knelt. Garry's television and some of her son's shoes had been stolen.

Eric Hunt testified at trial that on September 6, 2014, he lived near Carter in Cordele, and that he and Carter had been friends for a few months. During that time, Carter regularly carried a small, black .380 handgun. On the night of Garry's murder, Carter was at Hunt's residence until around 9:30 or 10:00 p.m., when they left the apartment. Hunt, who was walking to Pateville to see his girlfriend, parted ways with Carter on 10th Street near Garry's home. Carter had his pistol. After Hunt arrived at his girlfriend's house, he received a phone call from Carter's sister at approximately 1:00 a.m. Hunt told her that he had not seen her brother since they split up. She called Hunt again at approximately 4:00 a.m., and then between 5:30 a.m. and 6:00 a.m., and Hunt told her that he still had not heard from or seen Carter.

On November 11, 2014, Quatanna Shennett returned to the apartment she shared with Shaquille Loving in Hawkinsville and saw a man inside whom she did not know. She walked back outside

and called 911, and then saw the man leave the apartment carrying three pairs of Loving's shoes. He threw the shoes at her when she confronted him and then ran into a nearby apartment. Later that morning, as responding officers searched the area, they found Carter trying to break into another apartment in the same complex and arrested him. He had four items that belonged to Loving: his wallet, his .40-caliber Glock pistol, and two loaded magazines. Carter was also carrying a .380 Jiminez pistol in his front left pocket. A ballistics report matched the bullet recovered from Garry's body to the .380 Jiminez pistol Carter was carrying when he was arrested.

When questioned by a GBI agent, Carter gave conflicting explanations for his possession of the Jiminez pistol. First, he maintained that he stole the weapon from the same residence from which he stole the Glock handgun; next, Carter told the agent that he got the gun from someone named Sequoia Armstrong; he then said that he got the gun from "Shake," identified by the agent as Sir Gabriel Patrick; he finally claimed that the weapon came from a fourth source, "Chavers."

At trial, Reasha Smith testified that she was Carter's girlfriend in late 2014. In October 2014, Carter moved in with her in her Hawkinsville apartment, which was next door to Loving and Shennett's apartment. On November 10, the night before Carter was arrested for burglary, Carter accused Smith of cheating on him. During their argument, he told her, "I know you're lying . . . I will kill you; it's not like I ain't got away with it before."

1. In accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence was sufficient to enable a rational trier of fact to find Carter guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Carter claims that the trial court erred in rejecting his ineffective assistance of counsel claim based on his trial counsel's failure to object on three separate occasions to the admission of the sentencing portion of entire and unredacted dispositions from cases involving him as a juvenile, as violations of OCGA § 24-4-404. To

prove ineffective assistance, Carter must show both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). We need not review both parts of this test if Carter fails to prove one of them. See *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018).

At trial, S. J. testified about an incident in July 2006, in which she saw someone looking in her window and then heard someone trying to open her door. When the State tendered State's Exhibit 64, a certified copy of the juvenile court disposition showing that Carter, then 16 years old, was adjudicated delinquent for acts that would have constituted the offense of being a "peeping Tom,"[2] defense counsel objected on the grounds that the exhibit constituted an inadmissible juvenile disposition, was improper character evidence, and was not relevant. The trial court admitted State's Exhibit 64.

---

[2] See OCGA § 16-11-61.

R. F. testified about an incident on March 3, 2007, in which she was sitting in her car outside her home when a man approached the car and tried to get in and then stood nearby and masturbated. When the State tendered State's Exhibit 70, a certified copy of Carter's guilty plea in superior court on charges of "peeping Tom" and public indecency arising from that incident, defense counsel objected on the grounds that the exhibit was irrelevant and constituted improper character evidence. The trial court admitted State's Exhibit 70.

C. O. testified that, on December 4, 2007, someone knocked on her door and, when she refused to open the door, knocked on her window. She looked out the window and saw a man holding his penis and masturbating. When the State tendered State's Exhibit 68, a certified copy of Carter's guilty plea in superior court on charges of "peeping Tom" and public indecency arising from that incident, defense counsel objected on the grounds that the exhibit was irrelevant and constituted improper character evidence. The trial court admitted State's Exhibit 68.

Carter argues that, although his trial counsel raised objections to the admission of what he characterizes as three juvenile court disposition orders, she "failed to object as to the specific form and content of the dispositions," thereby allowing the jury improper access to the details of Carter's sentencing. Carter contends that his counsel was deficient because the sentencing information in the three exhibits was not admissible, and he was prejudiced because, as to Exhibit 64, the disposition order showed that the juvenile court determined that he should be detained "to protect the person or property of other[s] or the child," and Exhibits 68 and 70 showed that he was sentenced to serve significant time on probation and had been ordered to pay numerous fines.[3]

Pretermitting whether his trial counsel was deficient as alleged, Carter cannot carry his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result

---

[3] Carter does not enumerate as error the admission of S. J.'s, R. F.'s, or C. O.'s testimony, the similar testimony of other witnesses, or the admission of the juvenile adjudication and two criminal convictions.  Accordingly, we do not address those issues and express no opinion thereon.

of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694. In assessing whether Carter has satisfied this prejudice standard, "we review the record de novo. In doing so, we weigh the evidence as we would expect reasonable jurors to have done so[.]" *Woodard v. State*, 296 Ga. 803, 810 n. 5 (771 SE2d 362) (2015) (citation and punctuation omitted). Accord *Kennebrew v. State*, 299 Ga. 864, 873-874 (2) (b) (792 SE2d 695) (2016).

Although circumstantial, the evidence of Carter's guilt was strong. The unrebutted evidence shows that Carter was in possession of the murder weapon when he was arrested for another burglary approximately two months after Garry was killed. He then gave multiple contradicting accounts of how he came into possession of the weapon. Other evidence placed Carter in the vicinity of Garry's home the evening before her body was discovered, carrying a .380 pistol, the same type of gun used to shoot Garry.

Exhibits 68 and 70, notwithstanding Carter's characterization,

are not dispositions of a juvenile court, but convictions rendered in a superior court.[4] The sentencing information in the two judgments of conviction and in the juvenile court disposition, while not redacted, was not highlighted to the jury through testimony or by the State's argument. When considered in light of all the evidence, that the judgments of convictions showed that Carter had been sentenced to probation and ordered to pay numerous fines, and that the disposition order stated that his detention was necessary for the protection of others, was not reasonably likely to have affected the verdict. See *Matthews v. State*, 294 Ga. 50, 51 (2) (751 SE2d 78) (2013) (it was highly unlikely that admission of a sentencing order in appellant's prior conviction contributed to the jury's verdict); *De'Mon v. State*, 262 Ga. App. 10, 15 (4) (584 SE2d 639) (2003) (failure to redact sentencing information from certified copy of appellant's prior conviction was not harmful). Compare *Higgins v. State*, 304 Ga. App. 771, 771-773 (1) (698 SE2d 335) (2010) (where

---

[4] The acts charged in Exhibit 68 occurred in December 2007, when Carter was 18 years old. The acts charged in Exhibit 70 occurred in March 2007, when he was 17 years old.

appellant was on trial for rape, trial counsel was ineffective in failing to object to the admission of a juvenile disposition order where the sentence was not redacted in that, among other things, the State had a police investigator read aloud to the jury the paragraph from that order regarding "the need for protection of [the] community," and evidence was introduced that the sexual encounter giving rise to the rape charge may have been consensual). We find, therefore, that Carter cannot establish that, but for his counsel's alleged unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. The trial court did not err in denying his claim of ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

Decided May 20, 2019.

Murder. Crisp Superior Court. Before Judge Chasteen.

<u>Conger & Smith, Gregory D. Smith</u>, for appellant.

<u>Bradford L. Rigby, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General</u>, for appellee.